Lawrence J. King, Esq., #120805
LAW OFFICES OF LAWRENCE J. KING
11 Western Avenue
Petaluma, CA 94952
Telephone: 707-769-9791
Fax: 707-769-9253
Email: kingesq@pacbell.net

Attorneys for Plaintiff Ana Isabel Moreno

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| ANA ISABEL MORENO, | CASE NO. 1:23-cv-00541 JLT SKO |
|---|---|
| Plaintiff, | |
| v. | PLAINTIFF'S FIRST AMENDED COMPLAINT FOR:<br>(1) SEX DISCRIMINATION IN VIOLATION OF TITLE VII,<br>(2) RETALIATION IN VIOLATION OF TITLE VII,<br>(3) DEPRIVATION OF CIVIL RIGHTS IN VIOLATIONS OF 42 U.S.C SECTION 1983;<br>(4) SEX DISCRIMINATION IN VIOLATION OF THE FEHA; AND<br>(5) RETALIATION IN VIOLATION OF THE FEHA |
| CITY OF PORTERVILLE and BRUCE SOKOLOFF, | |
| Defendants. | |
| | AND |
| | PLAINTIFF'S DEMAND FOR A JURY TRIAL. |
| | UNLIMITED CIVIL ACTION. |

NOW COMES PLAINTIFF **ANA ISABEL MORENO,** and files this her complaint, demanding a jury trial and alleging the following:

**INTRODUCTION**

1. Plaintiff brings this suit to vindicate her right, and the right of all California employees, to work in an environment free from sex discrimination and retaliation. Bruce Sokoloff, a married man whom Plaintiff originally considered a trusted mentor, began asking

1  Plaintiff out for drinks, suggesting they go out of town together, and apparently seeking an
2  intimate relationship with Plaintiff while he was her supervisor. Plaintiff did her best to put him
3  off, making up excuses whenever he proposed getting together alone, and being sure there were
4  co-workers or other friends present whenever they were together outside of work.  When
5  Plaintiff began dating a fellow officer who joined the Porterville Police Department in
6  November, 2020, Defendant Sokoloff retaliated against Plaintiff for rejecting his sexual
7  overtures and instead becoming romantically involved with another officer. Defendant Sokoloff
8  succeeded in getting his romantic rival, the officer Plaintiff was dating, fired from the Porterville
9  Police Department. Then he created a hostile work environment that eventually forced Plaintiff
10 to quit.

**PARTIES AND VENUE**

12      2.      Plaintiff was, at all times relevant herein, a resident of Tulare County, California
13 and a Porterville Police Department employee.

14      3.      The City of Porterville is Charter City, located in Tulare County California, which
15 is within the jurisdiction of this Court.

16      4.      Porterville Police Department ("PPD") is a Department of the City of Porterville.

17      5.      Plaintiff alleges on information and belief that Defendant Sokoloff was, at all
18 times relevant herein, employed by the Porterville Police Department and a resident of Tulare
19 County.

20      6.      Plaintiff is informed and believes and upon such information and belief alleges
21 that each of the defendants herein was, at all times relevant to the action, an agent, employee,
22 and/or co-conspirator of the remaining defendants and was acting within the course and scope of
23 that relationship.  Plaintiff is further informed and believes and upon such information and belief
24 alleges that each of the defendants herein gave consent to, ratified, and authorized the acts
25 alleged herein of each of the remaining defendants.

## JURISDICTION & VENUE

7. Jurisdiction is proper in this Court under 28 U.S.C. 1331 because three of Plaintiff's causes of action are based on federal statutes.

8. Venue is proper in this Court because some or all of the acts upon which Plaintiff bases her causes of action took place within the geographic jurisdiction of the United States District Court for the Eastern District of California, Fresno Division.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. On July 12, 2022, Plaintiff filed a complaint with the United States Equal Opportunity Commission ("EEOC") and requested that her complaint be cross-filed with the California Department of Fair Employment & Housing ("DFEH"). The EEOC issued Plaintiff a "right-to-sue" notice on January 12, 2023.  The DFEH issued Plaintiff a "right-to-sue" notice on April 4, 2023.

## FACTUAL ALLEGATIONS

10. Plaintiff is a Mexican American woman, who was born and raised in the City of Porterville.

11. Plaintiff began volunteering at the PPD at the age of 15 as a Police Explorer.

12. In May of 2011, at the age of 18, Plaintiff was hired by the PPD as a Community Service Officer. She absolutely loved this position. It was not easy, but she learned a lot, including the basics needed to further her career goal of becoming a Peace Officer

13. Plaintiff worked as a Community Service Officer until January of 2013, when she enrolled in the State Center Regional Training Basic Police Academy. She graduated from the Police Academy in June of 2013.  Three days after she graduated from the Academy, she started working as a Peace Officer with the City of Porterville.

14. In February of 2017, Plaintiff left the PPD to work with the County of Tulare Bureau of Investigations as a Welfare Fraud Investigator. After working this position for approximately 10 months, she was promoted to the position of a Criminal Investigator with the Tulare Bureau of Investigations.  On September 3, 2019, after two and a half years working as a

welfare, then criminal, investigator for Tulare County, Plaintiff accepted a position as a Peace Officer with the City of Porterville.

15.     Plaintiff began reporting to (then) PPD Sergeant Bruce Sokoloff. Between March and December 2020, Plaintiff worked closely with Defendant Sokoloff, who introduced her to his wife and two daughters. Plaintiff grew to consider Defendant Sokoloff a trusted mentor and his wife a good friend.

16.     Defendant Sokoloff's attention originally seemed purely professional. However, beginning in December, 2020, things began to change. He started texting Plaintiff, suggesting she go out with him for a drink. Then he began suggesting she go to the beach with him.  Then, on or around December 28, 2020, Defendant Sokoloff asked Plaintiff to go out of town with him for the New Year's weekend while his family was out of town. Plaintiff made up an excuse not to go, but Defendant Sokoloff persisted, sending her multiple texts urging her to reconsider.  She did her best to convince him she could not go away, and ultimately, she did not go.

17.     Plaintiff began dating Anthony Luckey, who had recently joined the PPD as a Peace Officer after working for a number of years at the Tulare County Sheriff's Department.

18.     After Plaintiff rebuffed Defendant Sokoloff's suggestions of an inappropriate relationship and after he learned Plaintiff was dating Anthony Luckey, his attitude towards Plaintiff totally changed.  He became hyper-critical and irritable with Plaintiff and began engaging in hostile acts of retaliation that had the intended effect of making Plaintiff feel unsafe and unsupported at work.

19.     For instance, on March 11, 2021, while Plaintiff was on-duty, Defendant Sokoloff warned her that he was going to find a "nasty" transient for her to arrest and transport to the jail on her own. Defendant Sokoloff knew that Plaintiff had a K-9 in the back of her vehicle at the time, so she did not have any way to safely transport a person in custody. Close to 5 a.m. (her shift ended at 6 a.m.) Defendant Sokoloff radioed Plaintiff and ordered her to come to his location. When Plaintiff arrived, Defendant Sokoloff was with a male transient. The transient had a very strong and foul body odor, and both his clothing and person were excessively soiled. His

pants sagged and exposed his penis and behind. Defendant Sokoloff directed Plaintiff to evaluate the male for being under the influence. Prior to leaving the scene to which he had called Plaintiff, he directed Plaintiff to transport the male transient to the jail by herself. The rear seat of Defendant Sokoloff's vehicle was free at the time, and he would have been able to transport the individual safely, unlike Plaintiff.

20. Plaintiff evaluated the transient and determined that he was under the influence. Since she did not have a back seat to put him in to transport him, she had to put him in the front seat of her vehicle, sitting next to her with no separation and only cuffed in the back with a lap/shoulder seat belt.

21. By the time Plaintiff got back to the police department, Defendant Sokoloff had already told two of Plaintiff's co-workers what he had done to Plaintiff. The following day another co-worker told Plaintiff that Defendant Sokoloff told him about the incident. Not only had Defendant Sokoloff put Plaintiff into a dangerous situation in which she could have been injured, he was now bragging about it to people with whom Plaintiff worked.

22. Between March and September 2021, Defendant Sokoloff created an increasingly hostile work environment for Plaintiff. As a result, Plaintiff had anxiety about going to work and being around him.

23. By September 2021, Defendant Sokoloff had increasingly interfered with Plaintiff's relationship with Officer Luckey, going so far as giving the two of them a direct order that Officer Luckey could not take care of Plaintiff while she was home sick with Covid-19.

24. Later that month, Defendant Sokoloff orchestrated Officer Luckey's September 30, 2021 termination. The next day, October 1, 2021, he ordered Plaintiff to report to him in the Lieutenant's office[1] and informed her he was the one responsible for getting Officer Luckey fired.

25. In mid-November 2021, Defendant Sokoloff again ordered Plaintiff to report to him in the Lieutenant's office, where he formally wrote her up and told her, "You're going to get

---

[1] Defendant Sokoloff was promoted from Sergeant to Lieutenant in August, 2021.

5

PLAINTIFF'S FIRST AMENDED COMPLAINT & JURY DEMAND

fired, just like Luckey did."

26. Defendant Sokoloff's retaliatory campaign continued through the fall of 2021 and the winter of 2022. For instance, on February 3, 2022, although Plaintiff's February vacation request was approved by her immediate supervisors, Defendant Sokoloff had her vacation approval cancelled after speaking with her supervisors' supervisor.

27. Then, on February 4, 2022, Plaintiff was told by her immediate supervisors that there would be a routine administrative review of an incident that occurred that day in which a K-9 bit a suspect. Defendant Sokoloff countermanded her supervisors' decision and insisted that Plaintiff be the subject of an internal affairs investigation. Although the internal affairs investigation cleared Plaintiff, finding she had complied with the Department's policies and procedures during the incident, it was now clear to Plaintiff that Defendant Sokoloff was intent on getting her fired.

28. As any reasonable person would conclude under the circumstances, Plaintiff came to the awful realization that she had no choice but to resign from the PPD before Defendant Sokoloff destroyed her professional reputation and her career.

29. Plaintiff's last day at the PPD was March 26, 2022.

**FIRST CAUSE OF ACTION: SEX DISCRIMINATION
IN VIOLATION OF TITLE VII
(Against Defendant City of Porterville)**

30. Plaintiff incorporates herein the allegations set forth above.

31. Title VII of the Civil Rights Act of 1964 prohibits discrimination on the basis of a person's sex.

32. As more fully described above, Defendant Sokoloff discriminated against Plaintiff based upon her sex by requesting her to engage in an inappropriate intimate relationship with him and conditioning his treatment of her as her supervisor on her acquiescing to his requests.

33. Defendant City of Porterville is strictly liable for Defendant Sokoloff's illegal conduct due to the fact that he was acting as Plaintiff's supervisor.

34. As a result of Defendant's violations of Title VII of the Civil Rights Act of 1964,

Plaintiff has suffered, and will continue to suffer, damages, including, but not limited to, loss of income, loss of enjoyment of life, emotional distress, and damage to her health and personal and professional reputations.

**SECOND CAUSE OF ACTION:**
**RETALIATION IN VIOLATION OF TITLE VII**
**(Against Defendant City of Porterville)**

35. Plaintiff incorporates herein the allegations set forth above.

36. Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e, *et seq.*, prohibits retaliation against an employee who opposes or reports sex discrimination.

37. As described more fully above, Defendant Sokoloff retaliated against Plaintiff for rejecting his request that she engage in an inappropriate intimate relationship with him, and for entering into a relationship with another officer whom Defendant Sokoloff considered a romantic rival .

38. Defendant City of Porterville is strictly liable for Defendant Sokoloff's illegal conduct due to the fact that he was acting as Plaintiff's supervisor.

39. As a result of Defendant's violations of 42 U.S.C. section 2000e, *et seq.,* Plaintiff has suffered, and will continue to suffer, damages, including, but not limited to, loss of income, loss of enjoyment of life, emotional distress, and damage to her health and personal and professional reputations.

**THIRD CAUSE OF ACTION: DEPRIVATION OF CIVIL RIGHTS**
**IN VIOLATIONS OF 42 U.S.C SECTION 1983**
**(Against Defendants City of Porterville & Sokoloff)**

40. Plaintiff incorporates herein the allegations set forth above.

41. 42 U.S.C. section 1983 creates a private right of action against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

18. As described more fully above, Defendant Sokoloff deprived Plaintiff of rights

secured to her by the Constitution and federal statutes while acting as her supervisor and under color of state law, by subjecting her to sexual harassment, gender discrimination, and retaliatory adverse employment actions and by interfering with her relationship with her black co-worker. In doing so, Defendants denied Plaintiff her right to work in environment free of sex discrimination as secured to her under federal law, as well as her right of association secured to her by the United States Constitution. Defendant Sokoloff did so with the full knowledge and support of the highest levels of the Porterville Police Department. Both Plaintiff's right to work in environment free of sex discrimination as secured to her under federal law, as well as her right of association secured to her by the United States Constitution were clearly established at the time that Defendants violated those rights and, therefore, Defendants' conduct was not protected from liability by the doctrine of qualified immunity.

42. As a result of Defendant's violations of section 1983, Plaintiff has suffered, and will continue to suffer, damages, including, but not limited to, loss of income, loss of enjoyment of life, emotional distress, and damage to her health and personal and professional reputations.

43. In light of the evidence that Defendants acted with malice or evil intent, or with reckless or callous indifference to the Plaintiff's federally protected rights in violation of section 1983, Plaintiff requests an award of punitive damages in an amount according to proof.[2]

### FOURTH CAUSE OF ACTION: SEX DISCRIMINATION IN VIOLATION OF THE FEHA
**(Against Defendant City of Porterville)**

44. Plaintiff incorporates herein the allegations set forth above.

45. California's Fair Employment and Housing Act ("FEHA"), California Government Code Section 12900, *et. seq.*, prohibits discrimination on the basis of a person's sex.

46. As more fully described above, Defendant Sokoloff discriminated against Plaintiff based upon her sex by requesting her to engage in an inappropriate intimate relationship with him and conditioning his treatment of her as her supervisor on her acquiescing to his requests.

---

[2] In Smith v. Wade, 461 U.S. 30 (1983), the court held that punitive damages may be awarded on a Section 1983 claim against a state or local official who acted with malice or evil intent, or with reckless or callous indifference to the plaintiff's federally protected rights.

47.   Defendant City of Porterville is strictly liable for Defendant Sokoloff's illegal conduct due to the fact that he was acting as Plaintiff's supervisor.

48.   As a result of Defendant's violations of the FEHA, Plaintiff has suffered, and will continue to suffer, damages, including, but not limited to, loss of income, loss of enjoyment of life, emotional distress, and damage to her health and personal and professional reputations.

**FIFTH CAUSE OF ACTION:**
**RETALIATION IN VIOLATION OF THE FEHA**
**(Against Defendant City of Porterville)**

49.   Plaintiff incorporates herein the allegations set forth above.

50.   California's Fair Employment and Housing Act ("FEHA"), California Government Code Section 12900, *et. seq.*, prohibits retaliation against an employee who opposes discrimination on the basis of a person's sex.

51.   Defendant Sokoloff retaliated against Plaintiff for rejecting his request that she engage in an inappropriate intimate relationship with him, and for entering into a relationship with another officer whom Defendant Sokoloff considered a romantic rival.

52.   As more fully described above, Defendant City of Porterville is strictly liable for Defendant Sokoloff's illegal conduct due to the fact that he was acting as Plaintiff's supervisor.

53.   As a result of Defendant's violations of the FEHA, Plaintiff has suffered, and will continue to suffer, damages, including, but not limited to, loss of income, loss of enjoyment of life, emotional distress, and damage to her health and personal and professional reputations.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A.   For lost compensation and related employment benefits, past and future, according to proof;

B.   For special damages according to proof;

C.   For compensatory damages for mental and emotional distress;

D.   For punitive damages;

E.   For reasonable costs and attorney's fees;

F.   For prejudgment interest from the date of Plaintiff's discharge;

G. An injunction requiring the City of Porterville to reinstate Plaintiff to a position to which by now she would have been promoted but for the discrimination and retaliation to which she was subjected and to revise its policies and practices to eliminate the hostile and discriminatory culture at the Porterville Police Department and to institute a fair and non-discriminatory promotion process.

H. The appointment Special Master or Monitor to ensure the City of Porterville carries out the orders of this Court;

I. For such other and further relief that the Court may deem just and proper.

Dated: August 8, 2023                    Respectfully submitted,

LAW OFFICES OF LAWRENCE J. KING

By:  **/s/**
     Lawrence J. King