Jesse J. Maddox, Bar No. 219091
jmaddox@lcwlegal.com
Sue Ann Renfro, Bar No. 143122
srenfro@lcwlegal.com
LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704
Telephone:   559.256.7800
Facsimile:   559.449.4535

Attorneys for Defendants CITY OF PORTERVILLE and BRUCE SOKOLOFF

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA - FRESNO

| | |
|---|---|
| ANA ISABEL MORENO,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF PORTERVILLE and BRUCE SOKOLOFF,<br><br>Defendant. | Case No.: 1:23-cv-00541 JLT SKO<br><br>Complaint Filed: April 6, 2023<br>FAC Filed: August 8, 2023<br>SAC Filed: September 6, 2023<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:         November 8, 2023<br>Time:        9:30 a.m.<br>Courtroom: 7 |

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 8, 2023 at 9:30 a.m. or as soon thereafter as may be heard in Courtroom 7, Defendants City of Porterville ("City") and Bruce Sokoloff ("Sokoloff") (collectively "Defendants") will and hereby do move to dismiss all claims for relief in Plaintiff Ana Isabel Moreno's Second Amended Complaint ("SAC") pursuant to Rule 12(b)(6) of Federal Rules of Civil Procedure.

Defendants seeks to dismiss Plaintiff's SAC for failure to state a claim upon which relief can be granted, on the following grounds:

   1.     Plaintiff's first and fifth claims, alleging sex discrimination under Title VII of the

1964 Civil Rights Act ("Title VII") and the Fair Employment and Housing Act ("FEHA"), respectively, fail because Plaintiff fails to allege facts to support the "similarly situated" element of a disparate treatment claim. Further, Plaintiff fails to articulate facts that would permit even an inference of discrimination against her because of her sex causing her to voluntarily resign;

2.  Plaintiff's second and sixth claims alleging retaliation under Title VII and the FEHA, respectively, fail to allege facts supporting the City subjected her to an adverse employment action or a causal connection;

3.  Plaintiff's third claim, alleging deprivation of rights under 42 U.S.C § 1983, fails against the City because Plaintiff has not sufficiently pled *Monell* liability against the City;

4.  Plaintiff's third claim, alleging deprivation of rights under 42 U.S.C § 1983, fails against Defendant Sokoloff because he is immune under the doctrine of qualified immunity; and

5.  Plaintiff's fourth claim, alleging race discrimination in violation of Section 1 of the California Constitution, fails to state a viable claim against the City because Section 1 of the California Constitution does not support race discrimination claims.

Because Plaintiff has already had several opportunities to plead these claims for relief, and because Plaintiff cannot demonstrate that the foregoing deficiencies can be cured by amendment, Defendants respectfully seek dismissal of Plaintiff's SAC with prejudice and without leave to amend.

This motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Sue Renfro, all pleadings and papers filed in this case, and any other oral and documentary evidence as may be presented hereafter.

## MEET AND CONFER CERTIFICATION

Pursuant to the Court's standing order, the parties engaged in pre-filing meet and confer as to the Plaintiff's initial and first amended pleading. Declaration of Sue Renfro, at ¶¶ 3-5. On August 24, 2023, Plaintiff's counsel, Lawrence King, forwarded a proposed second amended complaint to defense counsel. *Id.* at ¶ 6. Rather than correcting the deficiencies raised by Defendants' counsel, Mr. King used the opportunity to add a new claim and theories. *Id.* at ¶ 7.

Defense counsel informed Mr. King that Defendants were "continuing to review and analyze" the proposed SAC, and also requested support for Plaintiff's new claim of discrimination pursuant to Section 1 of the California Constitution. *Id.* However, before Defendants could fully meet and confer regarding the deficiencies of Plaintiff's proposed amended pleading, Plaintiff filed and served his Second Amended Complaint. *Id.* at ¶ 9. The claims in Plaintiff's SAC remain insufficiently pled. *Id.*

Dated:  September 27, 2023                                         LIEBERT CASSIDY WHITMORE


By: *Jesse Maddox*
Jesse J. Maddox
Sue Ann Renfro
Attorneys for Defendants CITY OF PORTERVILLE and BRUCE SOKOLOFF

12143855.3 PO090-042

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................8

II. FACTUAL AND PROCEDURAL BACKGROUND............................................9

    A. ALLEGATIONS IN SAC ........................................................................9

    B. PROCEDURAL HISTORY....................................................................10

III. LEGAL STANDARD........................................................................................11

IV. LEGAL ARGUMENT.......................................................................................12

    A. PLAINTIFF'S FIRST AND FIFTH CLAIMS AGAINST THE CITY MUST BE DISMISSED BECAUSE THE SAC FAILS TO STATE A CLAIM FOR SEX DISCRIMINATION ON A DISPARATE TREATMENT THEORY ........................................................................12

    B. PLAINTIFF'S TITLE VII AND FEHA RETALIATION CLAIMS (SECOND AND SIXTH) FAIL TO ALLEGE FACTS SHOWING AN ADVERSE EMPLOYMENT ACTION OR A CAUSAL CONNECTION........................................................................................14

    C. PLAINTIFF'S THIRD CLAIM AGAINST THE CITY FAILS BECAUSE SHE HAS NOT SUFFICIENTLY PLED *MONELL* LIABILITY................................................................................................16

    D. PLAINTIFF'S SECOND CLAIM AGAINST SOKOLOFF FAILS BECAUSE SOKOLOFF IS ENTITLED TO QUALIFIED IMMUNITY..............................................................................................17

    E. SECTION 1 OF THE CALIFORNIA CONSTITUTION DOES NOT SUPPORT PLAINTIFF'S FOURTH CLAIM FOR RACE DISCRIMINATION ..................................................................................19

V. CONCLUSION..................................................................................................19

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

4

Defendants' Notice of Motion and Motion to Dismiss

12143855.3 PO090-042

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. al-Kidd*,
  563 U.S. 731, 735 (2011) ................................................................................................ 17

*Ashcroft v. Iqbal*,
  556 U.S. 662, 678 (2009) ................................................................................................ 11

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
  459 U.S. 519, 526, 103 S. Ct. 897 (1983) ....................................................................... 12

*Board of Directors of Rotary Int'l v. Rotary Club of Duarte,*
  481 U.S. 537 545 (1987) ................................................................................................. 18

*Bell Atl. Corp v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................ 11

*Berry v. Dep't. of Social Servces*,
  447 F.3d 642, 656 (9th Cir. 2006) ............................................................................. 13, 14

*Brewster v. Board of Education. of Lynwood Unified Sch. Dist.,*
  149 F.3d 971, 976 (9th Cir. 1998) ................................................................................... 18

*City of Santa Barbara v. Adamson,*
  27 Cal.2d 123, 130 (1980) .............................................................................................. 19

*Clark County Sch. Dist. v. Breeden,*
  532 U.S. 268, 273-74 (2001) .......................................................................................... 15

*Doe v. United States,*
  58 F.3d 494, 497 (9th Cir. 2009) .................................................................................... 12

*Ecological Rights Found. V. Pac. Gas & Elec. Co.,*
  713 F.3d 502, 520 (9th Cir. 2013) .................................................................................. 12

*Fonseca v. Sysco Food Services of Arizona, Inc.,*
  374 F.3d 840, 847 (9th Cir. 2004) .................................................................................. 13

*Gillette v. Delmore*,
  979 F.2d 1342, 1346–47 (9th Cir. 1992) ........................................................................ 16

*Harlow v. Fitzgerald,*
  457 U.S. 800, 818 (1982) ................................................................................................ 17

*Hashimoto v. Dalton,*
  118 F.3d 671, 674 (9th Cir. 1997) .................................................................................. 15

*Hittle v. City of Stockton*,
  2018 U.S. Dist. LEXIS 43664 [2018 WL 1367451] (E.D. Cal. 2018) ........................... 19

*Hopper v. City of Pasco*,
  241 F.3d 1067, 1083 (9th Cir. 2001) ..................................................................................16

*Johnson v. Riverside Healthcare Sys., LP*,
  534 F.3d 1116, 1122 (9th Cir. 2008) ..................................................................................13

*Josephs v. Pacific Bell,*
  432 F.3d 1006, 1017 (9th Cir. 2005) ..................................................................................13

*Knox v. Southwest Airlines,*
  124 F.3d 1103, 1107 (9th Cir. 1997) ..................................................................................18

*Leong v. Potter*,
  347 F.3d 1117, 1124 (9th Cir. 2003) ..................................................................................13

Little v. Windermere Relocation, Inc.,
  301 F.3d 958, 970 (9th Cir. 2002) ......................................................................................14

*Lopez v. Smith,*
  203 F.3d 1122, 1130 (9th Cir. 2000) ..................................................................................12

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973)............................................................................................................13

Miller v. Fairchild Indus., Inc.,
  885 F.2d 498, 505 (9th Cir. 1989) ......................................................................................15

*Miller v. Yokohama Tire Corp.,*
  358 F.3d 616, 622 (9th Cir. 2004) ......................................................................................12

Monell v. Dep't of Social Services Of City of NewYork,
  436 U.S. 658, 691 (1978)....................................................................................................16

Passantino v. Johnson & Johnson Consumer Prods., Inc.,
  212 F.3d 493, 500-01, 506 (9th Cir. 2000) ........................................................................14

*Pearson v. Callahan*,
  555 U.S. 223, 232 (2009)....................................................................................................17

*Ravel v. Hewlett-Packard Enter., Inc.*,
  228 F.Supp.3d 1086, 1091 (E.D. Cal. 2017)......................................................................12

Roberts v. United States Jaycees,
  468 U.S. 609, 618 (1984)....................................................................................................18

*Rutenschroer v. Starr Seigle Communications, Inc.*,
  484 F.Supp.2d 1144, 1155 (D. Hawaii, Jun. 29, 2006) .....................................................13

*Saucier v. Katz*,
  533 U.S. 194, 200 (2001)....................................................................................................17

*Scotch v. Art Institute of California-Orange County, Inc.,*
  173 Cal.App.4th 986, 1020 (2009) .....................................................................................15

*United States ex rel. Chunie v. Ringrose*,
    788 F.2d 638, 643 n. 2 (9th Cir. 1986) ..................................................................................12

University of Texas Sw. Med. Ctr. v. Nassar,
    133 S. Ct. 2517, 2534 (2013) ................................................................................................14

*Villegas v. Gilroy Garlic Festival Association,*
    541 F.3d 950, 957 (9th Cir. 2008) ........................................................................................16

Yartzoff v. Thomas,
    809 F.2d 1371, 1376 (9th Cir. 1987) ....................................................................................15

**Federal Statutes**

42 U.S.C. § 1983 ................................................................................................................................16

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This action arises from Plaintiff's employment as a police officer with Defendant City of Porterville ("City"). Plaintiff, a Mexican American woman, contends that when she began dating her Black co-worker, Anthony Luckey, Defendant Bruce Sokoloff ("Sokoloff") retaliated against her for "rejecting his sexual overtures," forcing Plaintiff to eventually quit her employment.

Plaintiff asserts claims based upon Title VII of the Civil Right Act of 1964 ("Title VII"), the Fair Employment and Housing Act ("FEHA"), and violations of the United States and California Constitutions. As to the City, Plaintiff fails to state a prima face case because she relies solely on conclusory and threadbare allegations. For example, Plaintiff fails to state a prima facie case for sex discrimination under either Title VII (First Cause of Action) or FEHA (Fifth Cause of Action) because she fails to allege whether similarly situated male employees were treated more favorably, which is a requisite element of her disparate treatment claim. Plaintiff also fails to articulate even an inference of discrimination against her because of her sex and the alleged adverse employment actions. Plaintiff's retaliation claims, based on Title VII (Second Cause of Action) and the FEHA (Sixth Cause of Action), similarly fail to articulate any facts showing a causal connection between the alleged sex discrimination causing her to voluntarily resign.

Plaintiff's sex discrimination claim against the City based on Section 1 of the California Constitution (Fourth Cause of Action) fails because Section 1 of the California Constitution does not support Plaintiff's theory. Further, during the meet and confer process, Plaintiff's counsel stated he would "correct" this deficiency before filing the SAC, but failed to do so.

Finally, Plaintiff's Second Cause of Action for violation of 42 U.S.C. § 1983 fails because he has not sufficiently pled *Monell* liability against the City. Further, Plaintiff's conclusory allegations are insufficient to support a claim based on intimate association. Thus, Sokoloff is entitled to qualified immunity because there is no clearly established constitutional right to intimate association for people who are merely "dating." Additionally, the allegations how Sokoloff interfered with Plaintiff's relationship are insufficient.

Plaintiff's SAC is her third attempt to properly plead her claims for relief. The parties stipulated twice to permit Plaintiff to file amended pleadings, the SAC remains deficient, and she has not alleged facts that support her claims against either the City or Sokoloff. Plaintiff's efforts to cure the defects previously identified by Defendants prove she cannot do so; therefore, this Court should grant the motion without further leave to amend.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     ALLEGATIONS IN SAC

Plaintiff began volunteering with the City's police department, at age 15, as a "Police Explorer." SAC, at ¶ 11. In June of 2013, she graduated from the Police Academy and began working for the City, but she left the City in 2017 to work for another county. SAC, at ¶ 13. In September of 2019, she accepted a position as a Police Officer with the City. *Id.*

Plaintiff contends that, between March and December of 2020, she reported to Defendant Bruce Sokoloff ("Sokoloff") and grew to consider him as a trusted mentor. SAC, at ¶ 15. She alleges that Sokoloff's intentions toward her started to change in December of 2020, and she rebuffed his "suggestions of an inappropriate relationship." SAC, at ¶ 16. After she began "dating" her co-worker, Officer Anthony Luckey, Sokoloff became "hyper-critical and irritable" with Plaintiff. SAC, at ¶ 18. For example, Plaintiff contends that on March 11, 2021, Sokoloff warned Plaintiff that he was going to find a "nasty" transient for her to arrest and transport to the jail. SAC ¶ 19. About an hour before her shift ended, Sokoloff radioed Plaintiff and ordered her to to his location. Sokoloff put her in "a dangerous situation" by directing her to evaluate the transient for being under the influence and to transport the suspect to jail "by herself." SAC, at ¶ 19, 21. The transient had a very strong and foul body odor, and his clothing and person were excessively soiled. SAC ¶ 19. His pants sagged, exposing his penis and behind. Plaintiff had a canine in the back of her vehicle; therefore, she had to put the transient in the front seat of her vehicle, with no separation between them. SAC ¶ 20. When Plaintiff arrived at the Police Department, Sokoloff had already told two of Plaintiffs coworkers what he had done. *Id.* The next day, another coworker told Plaintiff that Sokoloff had told him about the incident. SAC ¶ 21.

Plaintiff also conclusory alleges that between March and September of 2021, Sokoloff "created an increasingly hostile work environment" and "had increasingly interfered with her relationship with [Mr. Luckey]." SAC, at ¶¶ 22-23. In mid-November of 2021, Sokoloff ordered Plaintiff to report to his office, where he wrote her up. SAC, at ¶ 25.

Plaintiff contends Sokoloff continued a "retaliatory campaign" through the Fall of 2021 and Winter of 2022. SAC, at ¶ 26. On February 4, 2022, Plaintiff's immediate supervisors told her there would be a "routine administrative review of an incident that occurred that day in which a canine bit a suspect." SAC ¶ 27. Sokoloff insisted that an internal affairs investigation commence. *Id*. Plaintiff was cleared in the investigation. *Id*. Plaintiff believes Sokoloff was "intent on getting her fired," and she felt she had no choice but to resign before Sokoloff allegedly "destroyed her professional reputation." SAC, at ¶ 27 and 28. Plaintiff's last day with the City was March 26, 2022. SAC, at ¶ 29.

**B.   PROCEDURAL HISTORY**

Plaintiff's SAC is her third attempt to cure the deficiencies of her asserted claims. On April 6, 2023, Plaintiff filed and served her initial complaint against Defendants. Renfro Declaration, at ¶ 3. Pursuant to this Court's Standing Order, on May 12, 2023, defense counsel emailed Plaintiff's attorney, Lawrence King, outlining the deficiencies of Plaintiff's initial complaint. *Id.* Defendants' attorney raised various concerns in the meet and confer email, including that Plaintiff's cause of action for "Deprivation of Civil Rights in Violation of 42 U.S.C. Section 1983" contained insufficient and conclusory allegations, and noted Defendant Sokoloff's immunity pursuant to the doctrine of qualified immunity. *Id.*

Following the parties' initial meet and confer efforts, Mr. King requested the opportunity to file a First Amended Complaint ("FAC"), and defense counsel agreed. Renfro Declaration, at ¶ 4. The parties submitted a stipulation (Dkt. 10), and the Court granted Plaintiff leave to file a FAC.

On August 7, 2023, Plaintiff filed and served her FAC. Renfro Declaration, at ¶ 5. Defendants' counsel, again, met and conferred with Mr. King regarding issues that subjected the

FAC to a motion to dismiss and motion to strike. Mr. King, again, requested the opportunity to amend, and defense counsel agreed. *Id.* The parties again submitted a stipulation (Dkt. 17), and the Court subsequently granted Plaintiff leave to file a Second Amended Complaint.

On August 24, 2023, Mr. King forwarded a draft of Plaintiff's SAC. Renfro Declaration, at ¶ 6. In his cover email to defense counsel, Mr. King notes his belief that he addressed the concerns raised in prior meet and confer efforts, and requests the parties to stipulate "…for Defendants to have 21 days to file an answer (not a motion to strike nor a motion to dismiss)…" *Id.* However, rather than correcting the deficiencies discussed with Mr. King, Plaintiff used the opportunity to add a new claim and theories.

On August 29, 2023, Defendants' counsel informed Mr. King that Defendants were "continuing to review and analyze" the proposed SAC. Renfro Declaration, at ¶ 7. Defense counsel did not relinquish the right to file a motion to dismiss or motion to strike. *Id.* Further, counsel requested authority supporting Plaintiff's new claim of discrimination under Section 1 of the California Constitution on the basis of a person's race. *Id.* Mr. King responded that the SAC "should have referenced Article 1, sections 8 and 31 of the California Constitution, rather than section 1." Renfro Declaration, at ¶ 8, and Exhibit D attached thereto. He also stated that he would "correct that before the SAC is filed." *Id.*

Before Defendant could fully meet and confer regarding the deficiencies in Plaintiff's amended pleading, Plaintiff filed and served her SAC on September 6, 2023. Renfro Declaration, at ¶ 9. The claims in Plaintiff's SAC remain insufficiently pled despite multiple attempts to try to cure the deficiencies. *Id.* Further, contrary to the representation in his email, Mr. King did not revise reference to Section 1 of the California Constitution in the SAC before filing it. *Id.*

### III.    LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007)). A complaint cannot simply include conclusory allegations and no facts providing support. *Iqbal,*

556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss). Rather, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions. *Ravel v. Hewlett-Packard Enter., Inc.*, 228 F.Supp.3d 1086, 1091 (E.D. Cal. 2017).

Further, pleadings are not satisfied by "an unadorned the-defendant-unlawfully-harmed me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Instead, "[a] claim has facial plausibility when the plaintiff pleads enough factual content to allow the court to draw the reasonable inference that the defendant is liable under the alleged claim." *Id.* The plausibility requirement requires more than a sheer possibility that a defendant has acted unlawfully. *Id.*

A court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n. 2 (9th Cir. 1986). Moreover, it is inappropriate to assume that the plaintiff "can prove facts it has not alleged or that the defendants have violated the…laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S. Ct. 897 (1983). Where a plaintiff fails to "nudge…[his or her] claims…across the line from conceivable to plausible…", the complaint is properly dismissed. *Iqbal,* 556 U.S. at 678.

If a complaint fails to state a plausible claim, "[a] district could should grant leave to amend…unless it determines that the pleading could not possibly be cured by the allegations of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States,* 58 F.3d 494, 497 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district should freely give leave to amend, "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" (*Ecological Rights Found. V. Pac. Gas & Elec. Co.,* 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.,* 358 F.3d 616, 622 (9th Cir. 2004)).

IV. **LEGAL ARGUMENT**

    A. **PLAINTIFF'S FIRST AND FIFTH CLAIMS AGAINST THE CITY MUST BE DISMISSED BECAUSE THE SAC FAILS TO STATE A CLAIM FOR SEX DISCRIMINATION ON A DISPARATE TREATMENT THEORY**

Plaintiff must plead sufficient facts to state the elements of a prima facie case of discrimination. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008). Under both federal and California law, a plaintiff must plead all of the following four elements to articulate a prima facie case for discrimination based on a disparate treatment theory: (1) she is a member of a protected class; (2) she was qualified for his position; (3) she experienced an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *Fonseca v. Sysco Food Services of Arizona, Inc.,* 374 F.3d 840, 847 (9th Cir. 2004); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003).

The fourth prima facie element of a disparate treatment requires a plaintiff to show that "similarly situated individuals outside his protected class were treated more favorably." *Berry v. Dep't. of Soc. Servs.*, 447 F.3d 642, 656 (9th Cir. 2006). "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Rutenschroer v. Starr Seigle Communications, Inc.*, 484 F.Supp.2d 1144, 1155 (D. Hawaii, Jun. 29, 2006), citing *Josephs v. Pacific Bell,* 432 F.3d 1006, 1017 (9th Cir. 2005)). For example, in *Rutenschroer,* the plaintiff was a part-time, on-call employee," whose employer did not assign her any work after June 5, 2004. *Rutenschroer*, 484 F.Supp.2d 1144, 1158. On these facts, she alleged that she was terminated because of her race (African-American), color (black), and gender (female). *Id.* at 1151. The district court held that to meet the fourth prong, she had to "prove that employees with a similar work schedule that were not black, not African-American, and not female received better treatment." *Id.* at 1155.

Here, Plaintiff makes no other reference to sex or gender, let alone the sex or gender of any City employee (other than Mr. Luckey) or co-worker. There are no allegations that female police officers – or any other City employee – were treated more favorably than Plaintiff. Moreover, Plaintiff cannot correct this defect by amendment because no facts exist to establish that similarly situated male employees were treated more favorably.

13
Defendants' Notice of Motion and Motion to Dismiss

12143855.3 PO090-042

In the absence of any factual allegations that similarly situated female employees were treated more favorably, Plaintiff must at a minimum plead "other circumstances surrounding the adverse employment action [which] gives rise to an inference of discrimination." *Berry,* 447 F.3d 642, 656. Plaintiff fails to do so in the SAC. Plaintiff relies on three incidents (occurring over the course of 11 months) to support her discrimination claim – in March of 2021, Sokoloff directing her to evaluate a male transient for being under the influence and transporting him to jail; Sokoloff writing her up for an unknown incident in November of 2021; and Sokoloff cancelling her vacation request in February of 2022. On these allegations, Plaintiff summarily concludes that Sokoloff was "hyper-critical and irritable" with her. However, Plaintiff does not sufficiently allege how Sokoloff's actions were based on her sex.

Further, Plaintiff does not support her allegation that Sokoloff "discriminated" against her by "conditioning his treatment of her as a supervisor on her acquiescing to his requests." SAC, at ¶ 32. Her allegations do not, even remotely, attribute any decision or action based upon her sex.

Plaintiff has not pled a prima facie case of sex discrimination, and her claims should be dismissed.

### B. PLAINTIFF'S TITLE VII AND FEHA RETALIATION CLAIMS (SECOND AND SIXTH) FAIL TO ALLEGE FACTS SHOWING AN ADVERSE EMPLOYMENT ACTION OR A CAUSAL CONNECTION

To establish a claim for retaliation under Title VII, the SAC must sufficiently plead: (1) Plaintiff participated in protected activity under federal law; (2) an adverse employment practice; and (3) that the adverse employment action occurred because of her protected activity. 9th Cir. Jury Instruction 10.8. Regarding the third element, "a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013) (rejecting motivating factor test in retaliation claim).

Adverse employment actions take many forms. *See, e.g.*, *Little v. Windermere Relocation, Inc.,* 301 F.3d 958, 970 (9th Cir. 2002) (considering cut in monthly base salary); and *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 500-01, 506 (9th Cir. 2000)

(considering low rating on job performance review, decreased job responsibilities, and failure to receive promotions).

Further, the causation element may be inferred based on the proximity in time between the protected action and the retaliatory act; however, if the proximity in time is the only evidence to support plaintiff's retaliatory act, it must be "very close" in time. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (holding causation may be inferred from proximity in time between acts); *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001).

To state a claim for retaliation under the FEHA, Plaintiff must allege facts to show: (1) she engaged in a protected activity under the FEHA; (2) the City subjected her to an adverse employment action; and (3) a causal link between the protected activity and the City's actions. *Scotch v. Art Institute of California-Orange County, Inc.,* 173 Cal.App.4th 986, 1020 (2009).

The SAC does not allege sufficient facts showing the City subjected Plaintiff to an adverse employment action. In December of 2020, Plaintiff alleges she rejected Sokoloff's request to "engage her in an inappropriate relationship." The next (and closest in time) allegation is that three months later, on March 11, 2021, Sokoloff directed her to evaluate a male transient under the influence and transport the individual. Sokoloff's conduct in directing Plaintiff to perform duties within the scope of her job does not rise to the level of an "adverse employment action" - it is not equal to a negative job reference (*see Yanowitze v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028 (considering an adverse employment to materially affects the terms, conditions, or privileges of employment); *Hashimoto v. Dalton*, 118 F.3d 671, 674 (9th Cir. 1997) (considering negative job reference); it is not a layoff (*see Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 505 (9th Cir. 1989) (discussing layoff); and Sokoloff's conduct was not a transfer of duties or low performance ratings (*see Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (considering transfer of job duties and "undeserved" performance ratings).

Plaintiff next contends Sokoloff wrote-her up in November of 2021 and denied her vacation request in February of 2022. However, Sokoloff's conduct 11 and 14 months later, respectively, after she allegedly rebuffed his advances is not "very close" in time to support a

retaliatory motive. These allegations do not support a causal connection, and Plaintiff's claims should be dismissed.

### C.  PLAINTIFF'S THIRD CLAIM AGAINST THE CITY FAILS BECAUSE SHE HAS NOT SUFFICIENTLY PLED *MONELL* LIABILITY

Plaintiff alleges the Defendants violated her First and Fourteenth Amendment rights by engaging in sex discrimination and violating her "right of intimate association." SAC, at ¶ 41 (erroneously numbered as ¶ 18). As to the City, "a municipality cannot be held liable solely because it employs a tortfeasor – or in other words, a municipality cannot be held liable under § 1983 on a respondent superior theory." *Monell v. Dep't of Soc. Servs. Of City of N.Y.*, 436 U.S. 658, 691 (1978). Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. Plaintiff has not alleged facts supporting *Monell* liability against the City.

In *Monell*, the Court held that local governmental entities may only be liable in a Section 1983 action for alleged constitutional violations if the plaintiff meets specific requirements. 436 U.S. 658, 690 n.54. Specifically, the *Monell* Court held that a local government entity is not liable under Section 1983 simply because its employees violated a plaintiff's constitutional rights. *Monell*, 436 U.S. at 691. Rather, there are two ways a plaintiff may establish a local governing body's liability under Section 1983. First, a plaintiff may show "that the individual who committed [or ratified] the constitutional tort was an official with 'final policy-making authority' and that the challenged action itself thus constituted an act of official government policy." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992). Second, a plaintiff can establish *Monell* liability by showing a deprivation of constitutional rights and a municipal policy, custom or practice that was the "moving force" behind the constitutional violation. *Villegas v. Gilroy Garlic Festival Ass'n,* 541 F.3d 950, 957 (9th Cir. 2008). Plaintiff cannot establish liability through either method.

To survive dismissal, Plaintiff must have pled facts showing that Sokoloff had "final policy-making authority" such his actions constituted an act of municipal liability. *Hopper v. City*

*of Pasco*, 241 F.3d 1067, 1083 (9th Cir. 2001). Plaintiff has not alleged that Sokoloff acted as the City's final policymaker with respect to any conduct. Rather, Plaintiff articulates facts supporting the opposite – that Sokoloff was not a "final policymaker." Plaintiff states Sokoloff was a Sergeant through August of 2021, when the City promoted him to Lieutenant. SAC, at p. 5, fn. 1. Thus, he was not a "final policymaker" at pertinent times in Plaintiff's SAC. Plaintiff also alleges that Sokoloff acted with "the full knowledge and support of the highest levels of the Porterville Police Department, who <u>as the authorized policymakers</u> for the Porterville Police Department, had knowledge of Defendant Sokoloff's unconstitutional conduct that led to Plaintiff's constructive termination and officially approved his conduct." SAC ¶ 41 (mislabeled as ¶ 18; emphasis added). This allegation demonstrates the Sokoloff was not a policy maker, but that Plaintiff is attempting to hold the City liable under a theory of respondent superior, which she cannot do.

Further, Plaintiff has not pled the existence of any unconstitutional policy, custom, or pattern of activity on the part of the City. Plaintiff has not alleged facts to establish *Monell* liability, and the Section 1983 allegations against the City are subject to dismissal.

### D. PLAINTIFF'S SECOND CLAIM AGAINST SOKOLOFF FAILS BECAUSE SOKOLOFF IS ENTITLED TO QUALIFIED IMMUNITY

The doctrine of qualified immunity protects "government officials…from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Courts considering a claim of qualified immunity must determine whether the plaintiff has alleged both: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow*, 457 U.S. at 818).

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (internal quotes omitted). Therefore, qualified immunity questions should be resolved "at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Accordingly, it is proper for the Court to

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

12143855.3 PO090-042

consider and grant qualified immunity at the Fed. R. Civ. P. 12(b)(6) stage.

The qualified immunity test " 'allows ample room for reasonable error on the part of the [governmental official]'." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.,* 149 F.3d 971, 976 (9th Cir. 1998) (quoting *Knox v. Southwest Airlines,* 124 F.3d 1103, 1107 (9th Cir. 1997).

> Qualified immunity safeguards 'all but the plainly incompetent or those who knowingly violate the law.'" … "'[I]f officers of reasonable competence could disagree on th[e] issue [whether a chosen course of action is constitutional], immunity should be recognized.'

*Id*.

Here, Plaintiff's SAC alleges she was "dating" Mr. Luckey. However, the "right of intimate association" concerns the right to "enter into and maintain certain intimate human relationships [that] must be secured against undue intrusion by the State." *Roberts v. United States Jaycees,* 468 U.S. 609, 618 (1984). To qualify for constitutional protection, the claimed association must share qualities of other substantive rights recognized under substantive due process, such as marriage, childbirth, the raising and education of children, and cohabitation of relatives. *Id.* at 619-620. The claimed association must be carefully evaluated based on the relationship's objective characteristics such as "relative smallness, a high degree of selectivity in decision to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." *Id.* at 620. The Supreme Court has explained that the United States Constitution "protects those relationships…that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs, but also distinctly personal aspects of one's life." *Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte,* 481 U.S. 537 545 (1987) (quoting *Roberts*, 468 U.S. at 619-620).

Plaintiff's alleged "dating" relationship with Mr. Luckey is insufficient to establish a constitutional protection. "Dating" may be either selective or not, with deep attachment and commitment, or not. Further, "dating" could mean one date, a limited number of dates or more. Applying the *Roberts* factors, there no allegations that Plaintiff's "dating" relationship maintained

"a high degree of selectivity in decision to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." Thus, as alleged, Plaintiff's relationship is, at most, akin to a close friendship. Neither the Supreme Court nor the Ninth Circuit has recognized dating or a friendship, however close, as sufficiently intimate to warrant constitutional protection. (*Hittle v. City of Stockton*, 2018 U.S. Dist. LEXIS 43664 [2018 WL 1367451] (E.D. Cal. 2018)). Without such authority, Plaintiff's alleged right to intimate association was not 'clearly established' at the time of the challenged conduct. Therefore, Defendant Sokoloff is entitled to qualified immunity.

### E. SECTION 1 OF THE CALIFORNIA CONSTITUTION DOES NOT SUPPORT PLAINTIFF'S FOURTH CLAIM FOR RACE DISCRIMINATION

Article I, Section 1 of the California Constitution provides:

> All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

This provision confers a judicial right of action based on a right to privacy. *City of Santa Barbara v. Adamson,* 27 Cal.2d 123, 130 (1980). An abundance of case law supports this inalienable right. However, here, Plaintiff does not claim a violation of a privacy interest; rather, she alleges the City is liable pursuant to "Section 1 of the California Constitution because it prohibits discrimination on the basis of a person's sex." SAC, at ¶ 45. There is no authority supporting Plaintiff's claim.

Moreover, Plaintiff's counsel acknowledged this error before Plaintiff filed the SAC. Renfro Declaration, at ¶ 8, and Exhibit D attached thereto. Mr. King advised defense counsel he would "correct that" before he filed the SAC, but failed to do so. *Id.* Therefore, the claim should be dismissed without leave to amend.

### V. CONCLUSION

Despite multiple attempts to allege viable claims against the Defendants, Plaintiff has shown that she is unable to do so, and her SAC remains deficient. For that reason, Defendants request that the Court grant their motion to dismiss and deny Plaintiff a third opportunity to

amend her complaint.

Dated: September 27, 2023

LIEBERT CASSIDY WHITMORE

By: *Jesse Maddox*
Jesse J. Maddox
Sue Ann Renfro
Attorneys for Defendants CITY OF PORTERVILLE and BRUCE SOKOLOFF