UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA ISABEL MORENO,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF PORTERVILLE, et al.,<br><br>Defendants. | Case No.  1:23-cv-00541-BAM<br><br>ORDER GRANTING DEFENDANTS'<br>MOTION TO DISMISS PLAINTIFF'S<br>SECOND AMENDED COMPLAINT<br><br>(Doc. 20) |

Plaintiff alleges that she was subjected to discrimination and retaliation while employed by the Porterville Police Department.  (Doc. 19.)  She asserts violations of California's Fair Employment and Housing Act ("FEHA"), Title VII of the Civil Rights Act, and the United States and California Constitutions against the City of Porterville and Bruce Sokoloff ("Sokoloff") (collectively "Defendants").  (*Id.*)

Defendants move to dismiss Plaintiff's Second Amended Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 20 at 1-2.)  Plaintiff opposes dismissal, asserting the Second Amended Complaint states facts sufficient to survive a motion to dismiss.  (Doc. 30.)  The matter was not calendared for hearing, and the Court finds the motion suitable for decision without oral argument pursuant to Local Rule 230(g).[1]  For the reasons set forth below, Defendants' motion to dismiss Plaintiff's Second Amended Complaint is GRANTED.

///

---

[1] The parties have consented to magistrate judge jurisdiction over this action for all purposes, including trial and entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1).  (Docs. 24, 25, 26, 28.)

**I.      Summary of Second Amended Complaint**

Causes of Action

Plaintiff filed her Second Amended Complaint in this action asserting claims for (1) sex discrimination in violation of Title VII against Defendant City of Porterville, (2) retaliation in violation of Title VII against Defendant City of Porterville, (3) deprivation of civil rights in violation of 42 U.S.C. § 1983 against Defendants City of Porterville and Sokoloff, (4) sex discrimination in violation of the California Constitution against Defendant City of Porterville, (5) sex discrimination in violation of FEHA against Defendant City of Porterville, and (6) retaliation in violation of FEHA against Defendant City of Porterville.

Allegations

Plaintiff accepted a position as a Peace Officer with the City of Porterville on September 3, 2019.  (Doc. 19, Second Amended Complaint ("SAC") ¶ 14.)  Between March and December 2020, Plaintiff reported to then-Sergeant Sokoloff and grew to consider him as a trusted mentor. (*Id.* ¶ 16.)  Beginning in December 2020, Sokoloff started texting Plaintiff, suggesting that she go out with him for a drink, and then began suggesting she go to the beach with him.  On December 28, 2020, Sokoloff asked Plaintiff to go out of town with him for the New Year's weekend while his family was out of town.  Plaintiff made up an excuse not to go, but Sokoloff persisted, sending her multiple texts.  She did her best to convince him she could not go away, and ultimately, she did not go.  (*Id.*)

After Plaintiff began dating her co-worker, Officer Anthony Luckey, Sokoloff's attitude to Plaintiff "totally changed."  (SAC ¶ 18.)  Sokoloff became "hyper-critical and irritable with Plaintiff and began engaging in hostile acts of retaliation that had the intended effect of making Plaintiff feel unsafe and unsupported at work."  (*Id.*)  For example, on March 21, 2021, Sokoloff warned Plaintiff that he was going to find a "nasty" transient for her to arrest and transport to the jail on her own.  Near the end of her shift, Sokoloff radioed Plaintiff and ordered her to come to his location.  When Plaintiff arrived, Sokoloff was with a male transient.  The transient had a very strong and foul body odor, and both his clothing and person were excessively soiled.  His pants sagged and exposed his penis and behind.  Sokoloff directed Plaintiff to transport the male

transient to the jail by herself.  Plaintiff had a K-9 in the back of her vehicle, so she had to put the transient in the front seat, sitting next to her with no separation and only cuffed in the back with a lap/shoulder belt.  (*Id.* ¶¶ 19-20.)  By the time Plaintiff got back to the police department, Sokoloff had already told two of Plaintiff's co-workers what he had done.  The following day another co-worker told Plaintiff that Sokoloff told him about the incident.  (*Id.*)  Plaintiff alleges that not only had Sokoloff "put Plaintiff in a dangerous situation in which she could have been injured, he was now bragging about it to people with whom Plaintiff worked."  (*Id.* ¶ 21.)

Between March and September 2021, Sokoloff "created an increasingly hostile work environment for Plaintiff."  (SAC ¶ 22.)  By September 2021, Sokoloff "had increasingly interfered with Plaintiff's relationship with Officer Luckey, going so far as giving the two of them a direct order that Officer Luckey could not take care of Plaintiff while she was home sick with Covid-19."  (*Id.* ¶ 23.)  Later that month, Sokoloff "orchestrated" Officer Luckey's September 30, 2021 termination.  (*Id.* ¶ 24.)  The next day, on October 1, 2021, Sokoloff ordered Plaintiff to report to him in the Lieutenant's office[2] and informed her he was the one responsible for getting Officer Luckey fired.  (*Id.*)  In mid-November 2021, Sokoloff against ordered Plaintiff to report to him in the Lieutenant's office, where he formally wrote her up and told her, "You're going to get fired, just like Luckey did."  (*Id.* ¶ 25.)

Sokoloff's retaliatory campaign continued through the fall of 2021 and the winter of 2022.  For instance, on February 3, 2022, although Plaintiff's February vacation request was approved by her immediate supervisors, Sokoloff had her vacation approval cancelled after speaking with her supervisors' supervisor.  (SAC ¶ 26.)  Then, on February 4, 2022, Plaintiff was told by her immediate supervisors that there would be a routine administrative review of an incident that occurred that day in which a K-9 bit a suspect.  Sokoloff countermanded her supervisors' decision and insisted that Plaintiff be the subject of an internal affairs investigation.  Although the internal affairs investigation cleared Plaintiff, finding she had complied with the Department's policies and procedures during the incident, it was now clear to Plaintiff that Sokoloff was intent on

---

[2] Sokoloff was promoted from Sergeant to Lieutenant in August 2021.

getting her fired.  (*Id.* ¶ 27.)  Plaintiff alleges that as any reasonable person would conclude under

the circumstances, she came to the awful realization that she had no choice but to resign from the

Porterville Police Department before Sokoloff destroyed her professional reputation and her

career.  (*Id.* ¶ 28.)  Plaintiff's last day at the Porterville Police Department was March 26, 2022.

(*Id.* ¶ 29.)

Following her resignation in March 2022, Plaintiff alleges she filed a complaint with the

United States Equal Opportunity Commission ("EEOC") on July 12, 2022, which cross-filed her

complaint with the California Department of Fair Employment and Housing ("DFEH").  (SAC ¶

9.)  The EEOC issued Plaintiff a right-to-sue notice on January 12, 2023.  The DFEH issued

Plaintiff a "right-to-sue" notice on April 4, 2023.  (*Id.*)

**II.    Legal Standard**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim, and

dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts

alleged under a cognizable legal theory.  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42

(9th Cir. 2011) (quotation marks and citations omitted).  A court may only consider the

complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal

Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988);

*Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (quotation marks

omitted); *Conservation Force*, 646 F.3d at 1242; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969

(9th Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678. While the plausibility requirement is not akin to a probability

requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.*

This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense." *Id.* at 679.

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and construe the pleading in the light most favorable to the plaintiff, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Meek v. County of Riverside*, 183 F.3d 962, 965 (9th Cir. 1999).  However, the court need not credit "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *See Twombly*, 550 U.S. at 555.

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

**III.    Discussion and Analysis**

    **A.  First and Fifth Claims (Sex Discrimination)**

Defendants argue that Plaintiff's first and fifth claims alleging sex discrimination under Title VII and the FEHA, respectively, must be dismissed because Plaintiff fails to plead a prima facie case based on a disparate treatment theory.  (Doc. 20 at 13-14.)  Defendants contend that under both state and federal law, Plaintiff must plead the following elements:  (1) she is a member of a protected class; (2) she was qualified for her position; (3) she experienced an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. (*Id.* at 13, citing *Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840, 847 (9th Cir. 2004); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); and *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003).)

As to the fourth prima facie element, Defendants assert that there are no allegations in Plaintiff's complaint that "female police officers – or any other City employee – were treated more favorably" and "no facts exist to establish that similarly situated male employees were treated more favorably."  (Doc. 20 at 13.)  Defendants also assert that Plaintiff fails to plead that "other circumstances" surrounding the adverse employment action give rise to an inference of discrimination, pointing out that Plaintiff identifies three incidents occurring over the course of 11

5

months to support her claim, but does not sufficiently allege how Sokoloff's actions were based on her sex.  (*Id.* at 14.)

In opposition, Plaintiff asserts that her sex discrimination claims are hostile work environment claims based upon Sokoloff's alleged unwelcome sexual advances.  (Doc. 30 at 4.)  Citing *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995), Plaintiff argues that to state a prima facie case of a hostile work environment, "a person must show 'that: (1) she was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" (Doc. 30 at 4.)  Plaintiff asserts that there is no requirement that she "show that similarly situated individuals outside [her] protected class were treated more favorably."  (*Id.* at 4.)  She also asserts that she is not required to allege "other circumstances surrounding the adverse employment action [which] gives rise to an inference of discrimination." (*Id.* at 4-5.)   Plaintiff contends that her allegations regarding Sokoloff's conduct in December 2020 are sufficient to provide Defendants with notice of the basis for her sexual harassment claim.  (*Id.* at 5.)

Defendants reply that Plaintiff's opposition is the first time she asserts her sex discrimination claims are based on harassment.  Defendants therefore argue that this shift in approach is a tacit admission that she does not have legally cognizable discrimination claims, and she should not now be permitted to reinvent her claims after two previous amendments.  (Doc. 33 at 5-6.)  Defendants reiterate that Plaintiff has not stated a plausible theory of discrimination because she has failed to allege any adverse employment action that was based upon her sex and has failed to allege any facts to support that similarly situated individuals outside her protected class were treated more favorably.  (*Id.* at 5.)

By her opposition argument, Plaintiff essentially concedes that she has not stated a cognizable sex discrimination claim premised on a disparate treatment theory.  Accordingly, Defendants' motion to dismiss Plaintiff's disparate treatment claims is GRANTED.  These claims will be dismissed without leave to amend.  The Court now turns its discussion to Plaintiff's sex discrimination claims under Title VII and FEHA premised on a hostile work environment theory.

"[B]ecause Title VII and FEHA operate under the same guiding principles," courts often analyze Title VII and FEHA hostile work environment claims under federal law. *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) ("While Brooks argues that she was subjected to sexual discrimination under Title VII as well as FEHA, we need only assess her claim under federal law because Title VII and FEHA operate under the same guiding principles."); *see also McCullough v. City of Rialto*, No. 5:22-cv-00600-JWH-SP, 2023 WL 4157451, at *9 (C.D. Cal. Mar. 20, 2023) (applying Title VII framework to FEHA claims). The Court will do so here in light of the parties' reliance on Title VII principles in their briefing. (*See generally* Docs. 20, 30.)

Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). This "affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). "[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Id.* at 66.

To state a hostile work environment claim under Title VII based upon sex, an employee must allege that: "(1) she was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Porter v. California Dep't of Corrections*, 419 F.3d 885, 892 (9th Cir. 2005)); *see also Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003), as amended (Jan. 2, 2004); *Ortiz v. Fed. Bureau of Prisons*, No. 1:22-cv-00122-JLT-SKO, 2023 WL 1447920, at *3 (E.D. Cal. Feb. 1, 2023); *Ortiz v. Dameron Hosp. Assn.*, 37 Cal. App. 5th 568, 581 (2019) ("To establish a prima facie case of a hostile work environment [under FEHA, the plaintiff] must show that (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) defendants are liable for

7

1  the harassment.").

2      "A hostile work environment claim involves a workplace atmosphere so discriminatory

3  and abusive that it unreasonably interferes with the job performance of those harassed." *Brooks*,

4  229 F.3d at 923.  The working environment must be "subjectively and objectively" hostile  *Id.* at

5  923.   To determine whether the conduct was sufficiently severe or pervasive, the court "must

6  consider all the circumstances, including the frequency of the discriminatory conduct; its severity;

7  whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

8  unreasonably interferes with an employee's work performance." *Christian v. Umpqua Bank*, 984

9  F.3d 801, 809 (9th Cir. 2020) (internal quotations and citations omitted); *Galdamez v. Potter*, 415

10  F.3d 1015, 1023 (9th Cir. 2005) (making the objective determination of whether the work

11  environment is hostile requires courts to look at all of the circumstances, including the frequency,

12  severity, and nature of the conduct). *Brooks*, 229 F.3d at 923 (explaining courts use a "totality of

13  the circumstances test to determine whether a plaintiff's allegations make out a colorable claim of

14  hostile work environment" and includes relevant factors of "frequency, severity and level of

15  interference with work performance"); *Ortiz*, 2023 WL 1447920, at *4 (determining whether a

16  work environment is hostile requires court to look at the totality of the circumstances, including

17  "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

18  humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

19  employee's work performance").

20      A plaintiff must show a "concerted pattern of harassment of a repeated, routine or a

21  generalized nature."  *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013).

22  "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not

23  amount to discriminatory changes in the terms and conditions of employment." *Dominguez-Curry*

24  *v. Nevada Transp. Dep't*, 424 F.3d 1027, 1034 (9th Cir. 2005). Title VII is not a "general civility

25  code."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

26      Plaintiff first contends that under a notice pleading system, it is not appropriate to require

27  her to plead facts establishing a prima facie case.  (Doc. 30 at 4.)  Although plaintiff "need not

28  prove the prima facie elements to survive a motion to dismiss, [she] must plead the general

1  elements to make a claim facially plausible." *Lee v. Hertz Corp.*, 330 F.R.D. 557, 561 (N.D. Cal.

2  2019).

3      Plaintiff next contends that her allegations regarding Sokoloff's conduct in December

4  2020 are sufficient to provide Defendants with notice of the basis for her sexual harassment

5  claim.  (Doc. 20 at 5, quoting SAC ¶ 16.)  Briefly, Plaintiff alleges that beginning in December

6  2020, Sokoloff "started texting Plaintiff, suggesting that she go out with him for a drink.  Then he

7  began suggesting she go to the beach with him."  (SAC ¶ 16.)  Then, on or around December 28,

8  2020, Sokoloff asked Plaintiff "to go out of town with him for the New Year's weekend while his

9  family was out of town.  Plaintiff made up an excuse not to go, but Defendant Sokoloff persisted,

10  sending her multiple texts urging her to reconsider. She did her best to convince him she could

11  not go away, and ultimately, she did not go." (*Id.*)

12      These limited allegations are not sufficient to plead a hostile work environment claim.

13  For an environment to be considered hostile, the conduct must have unreasonably interfered with

14  Plaintiff's work performance.  *Clark County School Dist. v. Breeden*, 532 U.S. 268, 270-71

15  (2001); *Brooks*, 229 F.3d at 924 (identifying "level of interference with work performance" a

16  factor particularly relevant to the inquiry of whether a plaintiff's allegations make out a colorable

17  claim of hostile work environment).  Plaintiff does not allege that Sokoloff's conduct resulted in

18  Plaintiff's inability to perform her job or that it otherwise interfered with her work performance.

19  The alleged unwelcome conduct occurred in December 2020, but Plaintiff continued in her

20  position through March 2022, when she voluntarily resigned.  (SAC ¶¶ 28-29.)

21      Additionally, isolated incidents do not amount to a hostile work environment unless

22  "extremely serious." *Faragher*, 524 U.S. at 788; *see also*, *e.g.*, *Brooks*, 229 F.3d at 924

23  (explaining that isolated incidents are rarely sufficient because "the employer will have had no

24  advance notice and therefore cannot have sanctioned the harassment beforehand"); *Vasquez*, 349

25  F.3d at 644 (finding "two isolated offensive remarks" combined with other "unfair treatment"

26  was not severe or pervasive enough to create a hostile work environment).  Plaintiff's allegations

27  of isolated conduct in December 2020, generally comprised of texts, are not sufficient to

28  demonstrate that Sokoloff's conduct was ongoing or pervasive.  Plaintiff also does not allege that

1    the conduct was severe, such that it was physically threatening, abusive, or humiliating.  Rather,

2    she alleges only that Sokoloff suggested she go out with him for a drink or to the beach and, on

3    one occasion, invited her to go out of town with him for a weekend.  (SAC ¶ 16.)

4         Accordingly, Defendants' motion to dismiss Plaintiff's sex discrimination claims

5    premised on a hostile work environment theory is GRANTED.  These claims will be dismissed

6    with leave to amend.

7              **B.  Second and Sixth Claims (Retaliation)**

8         Plaintiff's second and sixth causes of action bring claims for retaliation under Title VII

9    and FEHA, respectively, against the City of Porterville.  Defendants move to dismiss these

10   claims, maintaining that the amended complaint fails to allege an adverse employment action or a

11   causal connection.

12        Title VII makes it unlawful "for an employer to discriminate against any of his employees

13   ... because he has opposed any practice made an unlawful employment practice by [Title VII] . . .

14   or because he has made a charge, testified, assisted, or participated in any manner in an

15   investigation, proceeding, or hearing under [Title VII] . . . ." 42 U.S.C. § 2000e-3(a). "An

16   employer can violate the anti-retaliation provisions of Title VII in either of two ways: (1) if the

17   adverse employment action occurs because of the employee's opposition to conduct made

18   unlawful [by Title VII]; or (2) if it is in retaliation for the employee's participation in the

19   machinery set up by Title VII to enforce its provisions." *Hashimoto v. Dalton*, 118 F.3d 671, 680

20   (9th Cir. 1997) (quotations and citations omitted).

21        To state a cognizable claim for retaliation in violation of Title VII, a plaintiff must

22   sufficiently plead that: (1) she engaged in a protected activity; (2) her employer subjected her to

23   an adverse employment action; and (3) there is a causal link between the protected activity and

24   the adverse action. *Bleeker v. Vilsack*, 468 F. App'x. 731, 732 (9th Cir. 2012); *Ray v. Henderson*,

25   217 F.3d 1234, 1240 (9th Cir. 2000). Similarly, "to establish a prima facie case of retaliation

26   under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the

27   employer subjected the employee to an adverse employment action, and (3) a causal link existed

28   between the protected activity and the employer's action." *Rizvanovic v. Amazon.com Servs.*,

1  LLC, No. 1:21-cv-01804-JLT-CDB, 2024 WL 1886495, at *8 (E.D. Cal. Apr. 30, 2024) (quoting

2  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005)).

### 1. Protected Activity

4         As to the first element, Plaintiff alleges that Sokoloff retaliated against her for "rejecting

5  his request that she engage in an appropriate intimate relationship with him."  (SAC ¶¶ 37, 56.)

6  There is caselaw suggesting that resisting sexual advances is a protected activity, but the question

7  is not settled.  *See Iula v. Voos*, No. 23-CV-2277 JLS (AHG), 2024 WL 171395, at *4 (S.D. Cal.

8  Jan. 16, 2024) (collecting cases).  The Court finds it unnecessary to decide the question for

9  purposes of the instant motion.  Defendants parenthetically note in their reply brief that Plaintiff

10  "did not describe" any alleged protected activity in which she engaged, (Doc. 33 at 6), but they do

11  not move to dismiss Plaintiff's retaliation claims for failure to adequately allege this element, (*see*

12  *generally* Docs. 20, 33).

### 2. Adverse Employment Action

14         Defendants argue that the SAC does not allege sufficient facts showing that Plaintiff was

15  subjected to an adverse employment action.  (Doc. 20 at 15.)

16         "[A]n adverse employment action is one that materially affects the compensation, terms,

17  conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir.

18  2008) (internal quotation marks and citation omitted); *see also Burlington N. & Santa Fe Ry. Co.*

19  *v. White*, 548 U.S. 53, 68 (2006) (specifying that the challenged action must be "materially

20  adverse," meaning that it would dissuade a reasonable worker from exercising protected rights);

21  *Ray*, 217 F.3d at 1242–43 (adopting interpretation of "adverse employment action" to mean "any

22  adverse treatment that is based on a retaliatory motive and is reasonably likely to deter

23  [employees] from engaging in protected activity"). The Ninth Circuit "define[s] adverse

24  employment action broadly," and has "found that a wide array of disadvantageous changes in the

25  workplace constitute adverse employment actions." *Ray*, 217 F.3d at 1240.  For example, adverse

26  employment actions may include a transfer of job duties, undeserved performance ratings, and the

27  dissemination of unfavorable job references. *Id.* at 1241 (internal citations and quotation marks

28  omitted).

Plaintiff contends that she has pled the following adverse employment actions:

1.  On March 11, 2021, while Plaintiff was on-duty, Defendant Sokoloff warned her that he was going to find a "nasty" transient for her to arrest and transport to the jail on her own. Defendant Sokoloff knew that Plaintiff had a K-9 in the back of her vehicle at the time, so she did not have any way to safely transport a person in custody. Then he in fact required her to do so and mocked her in front of her coworkers when she returned to the station.

2.  Interfered with Plaintiff's relationship with Officer Luckey, going so far as giving the two of them a direct order that Officer Luckey could not take care of Plaintiff while she was home sick with Covid-19.

3.  On October 1, 2021, the day after he orchestrated Officer Luckey's termination, he ordered Plaintiff to report to him and informed her he was the one responsible for getting Officer Luckey fired.

4.  In mid-November 2021, Defendant Sokoloff again ordered Plaintiff to report to him, where he formally wrote her up and told her, "You're going to get fired, just like Luckey did."

5.  On February 3, 2022, although Plaintiff's February vacation request was approved by her immediate supervisors, Defendant Sokoloff had her vacation approval cancelled.

6.  On February 4, 2022, Defendant Sokoloff countermanded her supervisors' decision to review an incident involving Plaintiff's service dog as a routine administrative review and insisted that Plaintiff be the subject of an internal affairs investigation. Although the internal affairs investigation cleared Plaintiff, finding she had complied with the Department's policies and procedures during the incident, Plaintiff reasonably concluded that Defendant Sokoloff was intent on getting her fired.

(Doc. 30 at 5-6.)

Taking each of these in turn, Plaintiff does not sufficiently allege the existence of an adverse employment action as to the first three events.  The first event, Sokoloff directing Plaintiff to arrest and transport a transient to jail, is asserted to be part of Plaintiff's job duties, (*see* Doc. 20 at 15), which she does not dispute. This event does not rise to the level of an adverse employment action as it does not involve a transfer of job duties, an undeserved performance rating, dissemination of an unfavorable job reference, or other acts considered adverse. *Ray*, 217 F.3d at 1241; *see also*, *e.g.*, *Coszalter v. City of Salem*, 320 F.3d 968, 976-977 (9th Cir. 2009) (finding that "some, perhaps all, of the following acts, considered individually, were adverse employment actions....: the transfer to new duties ...; an unwarranted disciplinary investigation ...; an unwarranted assignment of blame ...; a reprimand containing a false accusation ...; a criminal

investigation ...; repeated and ongoing verbal harassment and humiliation ...; a ten-day suspension from work ...; a threat of disciplinary action ...; an unpleasant work assignment ...; a withholding of customary public recognition ...; an unwarranted disciplinary action...; and two consecutive ninety-day "special" reviews of work quality ....").  Moreover, this event does not materially affect the compensation, terms, conditions, or privileges of employment, and would not deter a reasonable worker from exercising protected rights as it is part of her job duties.  *See Kurdi v. California Dep't of Transportation*, No. 1:22-cv-00729-JLT-EPG, 2023 WL 267538, at *9 (E.D. Cal. Jan. 18, 2023) (where events did not materially affect the compensation, terms, conditions, or privileges of employment (and would not deter a reasonable worker from reporting Title VII violations plaintiff failed to allege facts sufficient to support conclusion she was subjected to an adverse employment action).

The second and third events, Sokoloff issuing a direct order that Officer Luckey could not take care of Plaintiff while she was home sick with Covid-19 and Sokoloff informing Plaintiff that he was the one responsible for Officer Luckey's termination, likewise do not rise to the level of adverse employment actions.  They do not involve a transfer of job duties, an undeserved performance rating, dissemination of an unfavorable job reference, or other acts considered adverse. *Ray*, 217 F.3d at 1241; *see also, e.g.*, *Coszalter*, 320 F.3d at 976-977.  These events also do not materially affect the compensation, terms, conditions, or privileges of employment, and would not deter a reasonable worker from exercising protected rights, particularly to the extent they are specific to Officer Luckey, not Plaintiff.  *See Kurdi*, 2023 WL 267538, at *9.

The fourth event, formally writing Plaintiff up and warning her that she was going to get fired, may amount to an adverse employment action.  *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 847 (9th Cir. 2004) (concluding a warning letter or negative review also can be considered an adverse employment action).  The fifth event, cancelling her vacation approval, also may constitute an adverse employment action.  *See Kurdi*, 2023 WL 267538, at *9 (citing *Smith v. County of Santa Clara*, 2016 WL 4076193, at *5, 18 (N.D. Cal. Aug. 1, 2016), (concluding being denied a schedule change request may constitute an adverse employment action).  The sixth event, insisting that Plaintiff be the subject of an internal affairs investigation,

1    also may constitute an adverse employment action.  *See Guthrie v. Carvajal*, No. 1:18-CV-0282-

2    BAM, 2021 WL 1966326, at *16 (E.D. Cal. May 17, 2021) (instituting an investigation

3    constitutes an adverse employment action); *accord Coszalter,* 320 F.3d at 976-977.

4          At the pleading stage, the Court finds that Plaintiff has sufficiently alleged the existence of

5    an adverse employment action when (1) she received a formal write up in November 2021; (2)

6    her vacation request was cancelled in February 2022; and (3) she was subjected to an internal

7    affairs investigation in February 2022.

8          **3.  Causal Connection**

9          Defendants next argue that Plaintiff has failed to sufficiently allege a causal connection

10   between her protected conduct and any adverse employment action.

11         Causation may be "inferred from circumstantial evidence, such as the employer's

12   knowledge that the plaintiff engaged in protected activities and the proximity in time between the

13   protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d

14   1371, 1375 (9th Cir. 1987).  Indeed, "causation can be inferred from timing alone where an

15   adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island*

16   *Air*, 281 F.3d 1054, 1065 (9th Cir. 2002).

17         As discussed above, the alleged adverse employment actions occurred in November 2021

18   and February 2022, 11 and 14 months after Plaintiff allegedly rebuffed Sokoloff's advances in

19   December 2020.  The temporal proximity of these asserted adverse employment actions and any

20   protected activity is not sufficient to infer causation.  *See Pardi v. Kaiser Foundation Hospitals*,

21   389 F.3d 840, 850 (9th Cir. 2004) ("When adverse employment decisions closely follow

22   complaints of discrimination, retaliatory intent may be inferred."); *Oden Meyers v. Kendall*, No.

23   2:21-cv-08546-MRA-MAR, 2024 WL 3743694, at *11 (C.D. Cal. June 3, 2024), report and

24   recommendation adopted sub nom. *Meyers v. Kendall*, No. 2:21-cv-08546-MRA (MAR), 2024

25   WL 3582623 (C.D. Cal. July 30, 2024) (concluding "ten months is much longer of a gap than

26   most where courts have found the temporal proximity to be "very close" and "the temporal

27   proximity alone would not be sufficient . . . to show a causal link between the alleged adverse

28   actions").

Because Plaintiff's amended complaint fails to sufficiently allege a causal link between any protected activity and the alleged adverse actions, Defendants' motion to dismiss Plaintiff's retaliation claims is GRANTED.  These claims will be dismissed with leave to amend.

### C.  Third Claim (*Monell*)

Defendants move to dismiss Plaintiff's third clam for relief under 42 U.S.C. § 1983 against the City of Porterville because Plaintiff has not sufficiently pled *Monell* liability   (Doc. 20 at 16.)  In opposition, Plaintiff argues that she sufficiently alleges a *Monell* claim based on the City of Porterville's ratification of Sokoloff's conduct.  (Doc. 30 at 7.)

Municipalities "cannot be held liable [for the actions of their employees] under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 591 (1978).  Instead, the constitutional injury must occur during the execution of an official "policy or custom." *Id.* at 694.  "A plaintiff may assert *Monell* liability based on: (1) an official policy; (2) a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity'; (3) the act of an 'official whose acts fairly represent official policy such that the challenged action constituted official policy'; or (4) where "an official with final policy-making authority 'delegated that authority to, or ratified the decision of, a subordinate.'" *Bustamante v. County of Shasta*, No. 2:23-cv-01552-TLN-DMC, 2024 WL 3673529, at *2 (E.D. Cal. Aug. 6, 2024) (quoting *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008)).

Only ratification appears to be at issue in this case. (*See* Doc. 30 at 7.)  A municipality may be liable under this theory if "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it."  *Gillette v. Delmore*, 979 F.2d 1342, 1346–1347 (9th Cir. 1992). "Ratification requires that the policymaker engage in a 'conscious, affirmative choice' to endorse a subordinate's conduct."  *Bustamante*, 2024 WL 3673529 at *3, quoting *Gillette*, 979 F.2d at 1347.

In the SAC, Plaintiff alleges Sokoloff acted "with the full knowledge and support of the highest levels of the Porterville Police Department, who as the authorized policymakers for the Porterville Police Department had knowledge of Defendant Sokoloff's unconstitutional conduct that led to Plaintiff's constructive termination and officially approved his conduct."  (SAC p. 8:9-

13 (labelled ¶ 18).)  This allegation alone is conclusory and is insufficient to state a *Monell* claim

against the City of Porterville based upon ratification. *Bustamante*, 2024 WL 3673529, at *3

(concluding that allegations certain officials with final policy-making authority had "direct

knowledge of the facts of this incident" and "made a deliberate choice to endorse the decisions of

[probation department employees] and the basis for those decisions" were "unclear, conclusory,

and insufficient to state a *Monell* claim . . . based upon ratification"); *Thurston v. City of Vallejo*,

No. 2:19-CV-1902-KJM-CKD, 2021 WL 1839717, at *6 (E.D. Cal. May 7, 2021) (finding that

"simply listing a number of high-ranking individuals is not sufficient to allege a specific final

policymaker" and "allegations that the policymakers 'ratified' or 'knew and/or reasonably should

have known about' the alleged constitutional violations are conclusory").

        Accordingly, the Court concludes that Plaintiff has failed to state a plausible *Monell*

claim.  Defendants' motion to dismiss the *Monell* claim against the City of Porterville is

GRANTED.  The *Monell* claim will be dismissed with leave to amend.

### D.  Third Claim (Qualified Immunity)

        Defendants argue that Sokoloff is entitled to qualified immunity on Plaintiff's third claim

for relief alleging violation of her right to intimate association.[3]  (Doc. 20 at 18-19.)

        "Government officials enjoy qualified immunity from civil damages unless their conduct

violates 'clearly established statutory or constitutional rights of which a reasonable person would

have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v.

Fitzgerald*, 457 U.S. 800, 818 (1982)). When presented with a qualified immunity defense, the

central questions for the court are: (1) whether the facts alleged, taken in the light most favorable

to the plaintiff, demonstrate that the defendants conduct violated a statutory or constitutional

right; and (2) whether the right at issue was "clearly established" at the time it is alleged to have

been violated. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by*

---

[3] Plaintiff's third claim alleges unlawful conduct by "subjecting her to sexual harassment, gender
discrimination, and retaliatory adverse employment actions and by interfering with her
relationship with her black co-worker."  (SAC p. 8:4-5 (labelled ¶ 18).) By this order, the Court
grants leave to amend as to the claims based on sexual harassment, gender discrimination, and
retaliatory adverse employment actions.  Therefore, the issue of qualified immunity is focused on
the alleged right to intimate association.

1   *Pearson v. Callahan*, 555 U.S. 223 (2009).

2           A right is "clearly established" when its bounds are "sufficiently clear that a reasonable

3   official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202. The

4   Supreme Court does "not require a case directly on point, but existing precedent must have placed

5   the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741

6   (2011). Indeed, "in an obvious case, [highly generalized] standards can 'clearly establish' the

7   answer, even without a body of relevant case law." *Brosseau v. Haugen*, 543 U.S. 194, 199

8   (2004).

9           The Supreme Court "has concluded that choices to enter into and maintain certain intimate

10  human relationships must be secured against undue intrusion by the State because of the role of

11  such relationships in safeguarding the individual freedom that is central to our constitutional

12  scheme." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984).  This freedom of intimate

13  association "receives protection as a fundamental element of personal liberty." *Id.* at 618; *see*

14  *also Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte ("Rotary Club")*, 481 U.S. 537, 545

15  (1987) (identifying that the Supreme Court "has recognized that the freedom to enter into and

16  carry on certain intimate or private relationships is a fundamental element of liberty protected by

17  the Bill of Rights.").  Further, the Supreme Court has "emphasized that the First Amendment

18  protects those relationships...that presuppose 'deep attachments and commitments to the

19  necessarily few other individuals with whom one shares not only a special community of

20  thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'" *Rotary*

21  *Club*, 481 U.S. at 545 (quoting *Roberts*, 468 U.S. at 619–20).  Although the Supreme Court has

22  "not attempted to mark the precise boundaries of this type of constitutional protection," the

23  intimate relationships that have been "accorded constitutional protection include marriage; the

24  begetting and bearing of children; child rearing and education; and cohabitation with relatives."

25  *Id.* at 545 (internal citations omitted).  However, the constitutional protection is not restricted to

26  relationships among family members.  *Id.* The Supreme Court has explained that qualifying

27  relationships "are distinguished by such attributes as relative smallness, a high degree of

28  selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical

aspects of the relationship." *Roberts*, 468 U.S. at 620; *see also Rotary Club*, 481 U.S. at 545 (determining whether a particular association is sufficiently personal or private to warrant constitutional protection requires consideration of "factors such as size, purpose, selectivity, and whether others are excluded from critical aspects of the relationship"); *see Mann v. City of Sacramento*, No. 21-15440, 2022 WL 2128906, at *1 (9th Cir. June 14, 2022) ("Neither *Rotary Club* nor its progeny extended the First Amendment to cover [intimate-association claims brought by adult siblings].").

Relevant here, Plaintiff's SAC alleges that Plaintiff was "dating" Officer Luckey.  (SAC ¶ 17.)  Defendants contend that applying the relevant *Roberts* factors, there are no allegations that Plaintiff's dating relationship maintained "a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship."  (Doc. 20 at 18-19.)  Defendants therefore characterize Plaintiff's relationship as akin to a close friendship, and assert that neither the Supreme Court nor the Ninth Circuit has recognized dating or a friendship, however close, as sufficiently intimate to warrant constitutional protection.  (*Id.* at 19, citing *Hittle v. City of Stockton*, 2018 WL 1367451 (E.D. Cal 2018).)  Defendants conclude that in the absence of such authority, Plaintiff's alleged right to intimate association was not clearly established at the time of the challenged conduct, and Sokoloff is entitled to qualified immunity.

In opposition, Plaintiff does not challenge Defendants' assertion that the SAC fails to allege that Plaintiff's dating relationship maintained "a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship."  Plaintiff also does not challenge Defendants' characterization of Plaintiff's relationship as a close friendship.  Plaintiff instead argues that Sokoloff is not protected by qualified immunity because "Defendants ignore the fact that as early as 1983 the Supreme Court condemned a university's rule that prohibited interracial dating," citing *Maini v. I.N.S.*, 212 F.3d 1167, 1175 (9th Cir. 2000) and *Bob Jones University v. United States*, 461 U.S. 574, 580 (1983). (Doc. 30 at 7-8.)  Plaintiff asserts that in "this day and age, Defendants' claim that Sokoloff is protected by qualified immunity because he would not have known that penalizing an interracial

1  couple for dating is unconstitutional cannot be given any credence." (*Id.*)

2          Plaintiff has the burden of showing that the constitutional violation was clearly established

3  by defining the law at issue in a concrete, particularized manner. *Shafer v. County of Santa*

4  *Barbara*, 868 F.3d 1110, 1117-18 (9th Cir. 2017) (stating that the plaintiff bears the burden of

5  showing that the rights allegedly violated were clearly established); *Gordon v. County of Orange*,

6  6 F.4th 961, 969 (9th Cir. 2021) ("[t]he plaintiff bears the burden of proving that the right

7  allegedly violated was clearly established" at the time of the violation). A case directly on point is

8  not necessary to defeat qualified immunity, but existing case law must have put "every reasonable

9  official" on notice that the conduct was unconstitutional. *Martinez v. High*, 91 F.4th 1022, 1031

10  (9th Cir. 2024).

11          Plaintiff has not identified controlling authority that has applied the relevant *Roberts*

12  factors discussed above and held that "dating" or a close friendship is sufficiently intimate to

13  warrant constitutional protection. *See Hittle v. City of Stockton*, No. 2:12-cv-00766-TLN-KJN,

14  2018 WL 1367451, at *15 (E.D. Cal. Mar. 16, 2018) (identifying that neither the Ninth Circuit

15  nor the Supreme Court has recognized a friendship, however close, as sufficiently intimate to

16  warrant constitutional protection). Here, Plaintiff's broad identification of a clearly established

17  right is insufficient. *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5-6 (2021) ("Although this Court's

18  caselaw does not require a case directly on point for a right to be clearly established, existing

19  precedent must have placed the statutory or constitutional question beyond debate. This inquiry

20  must be undertaken in light of the specific context of the case, not as a broad general

21  proposition." (internal quotation marks and citations omitted)). In the absence of any such

22  authority, Plaintiff's alleged right to intimate association in this context was not clearly

23  established at the time of the challenged conduct.

24          Further, in this case, the SAC does not allege that race was a basis for "interference with

25  association." The only reference to race is a conclusory allegation that Sokoloff "was interfering

26  with her relationship with her black co-worker." (SAC p. 8:5 (labelled ¶ 18).) Rather, sexual

27  harassment, gender discrimination, and retaliatory adverse employment actions are the basis of

28  Plaintiff's claims, not race. *Id.* Consequently, Sokoloff is entitled to qualified immunity on

Plaintiff's third claim for relief, insofar as it seeks money damages from Sokoloff in his individual capacity for allegedly infringing upon Plaintiff's right to intimate association, and this claim is dismissed with prejudice.

### E.  Fourth Claim (Sex Discrimination in Violation of California Constitution)

Plaintiff's fourth claim alleges sex discrimination in violation of "Section 1 of the California Constitution."  (SAC ¶ 45.)  .

Article 1, Section 1 of the California Constitution states:

> All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

Cal. Const. Art. 1, § 1.  Defendants move to dismiss this claim, asserting that Section 1 does not support a sex discrimination claim.  Plaintiff has neither opposed dismissal of this claim, nor cited case law suggesting Article 1, Section 1 provides for a claim based on sex discrimination (*See generally* Doc. 30.)  Accordingly, Defendants' motion to dismiss Plaintiff's fourth claim for sex discrimination in violation of Article 1, Section 1 of the California Constitution is GRANTED.  This claim will be dismissed without leave to amend.

### IV.    Leave to Amend

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend should be freely given "when justice so requires," and courts are guided by "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez*, 203 F.3d at 1127 (alterations and internal quotation marks omitted). The Ninth Circuit has repeatedly held that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, except where noted above, Plaintiff will be granted **a final opportunity** to amend to cure the identified pleading deficiencies.

### CONCLUSION AND ORDER

For the reasons stated, IT IS HEREBY ORDERED as follows:

1. Defendants' motion to dismiss (Doc. 20) is GRANTED as follows:

    a. The motion is **GRANTED** as to Plaintiff's first and fifth claims alleging sex discrimination based on a disparate treatment theory.  To the extent the first and fifth claims are premised on a disparate treatment theory, they are **DISMISSED** without leave to amend.

    b. The motion is **GRANTED** as to Plaintiff's first and fifth claims alleging sex discrimination based on a hostile work environment theory.  These claims are **DISMISSED** with leave to amend.

    c. The motion is **GRANTED** as to Plaintiff's second and fifth claims for retaliation.  These claims are **DISMISSED** with leave to amend.

    d. The motion is **GRANTED** as to Plaintiff's *Monell* claim against the City of Porterville.  The *Monell* claim is **DISMISSED** with leave to amend.

    e. Plaintiff's third claim for relief is **DISMISSED** with prejudice insofar as it seeks money damages from Sokoloff in his individual capacity for allegedly infringing upon Plaintiff's right to intimate association.

    f. The motion is **GRANTED** as to Plaintiff's fourth claim for sex discrimination in violation of Article 1, Section 1 of the California Constitution.  This claim is **DISMISSED** without leave to amend.

2. Plaintiff may file an amended complaint within twenty-one (21) days of the date of service of this order.  Defendants shall file any responsive pleading within fourteen (14) days from service of Plaintiff's amended complaint.

3. If Plaintiff fails to file an amended complaint, then the action may be dismissed without prejudice for failure to prosecute and failure to obey the Court's order.

IT IS SO ORDERED.

Dated:   __September 30, 2024__        _____/s/ *Barbara A. McAuliffe*_____
                                                 UNITED STATES MAGISTRATE JUDGE