1  Jesse J. Maddox, Bar No. 219091
   jmaddox@lcwlegal.com
2  Phil Bui, Bar No. 328471
   pbui@lcwlegal.com
3  LIEBERT CASSIDY WHITMORE
   A Professional Law Corporation
4  5250 North Palm Ave, Suite 310
   Fresno, California 93704
5  Telephone:    559.256.7800
   Facsimile:    559.449.4535
6

7  Attorneys for Defendant CITY OF PORTERVILLE

8                    UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA - FRESNO

10

11  ANA ISABEL MORENO,                    Case No.:  1:23-cv-00541- BAM

12                    Plaintiff,          Complaint Filed: April 6, 2023
                                          FAC Filed: August 14, 2023
13         v.                             SAC Filed: September 6, 2023
                                          TAC Filed: November 8, 2024
14  CITY OF PORTERVILLE,
                                          **DEFENDANT'S NOTICE OF MOTION AND
15                    Defendant.          MOTION TO STRIKE PORTIONS OF
                                          PLAINTIFF ANA ISABEL MORENO'S
16                                        THIRD AMENDED COMPLAINT;
                                          MEMORANDUM OF POINTS AND
17                                        AUTHORITIES IN SUPPORT THEREOF**

18                                        Date:        January 10, 2024
                                          Time:        9:00 a.m.
19                                        Courtroom: 8

20         **TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF, AND HER

21  ATTORNEYS OF RECORD**:

22         PLEASE TAKE NOTICE that on January 10, 2024, at 9:00 a.m. or as soon thereafter as

23  the matter may be heard before the Honorable Magistrate Barbara A. McAuliffe of the United

24  States District Court, Eastern District of California, Fresno Courthouse, located at 2500 Tulare

25  Street, Courtroom 8, Fresno, California 93721, Defendant City of Porterville ("City" or

26  "Defendant") will and hereby does move the Court to strike the following provisions of the Third

27  Amended Complaint ("TAC") of Plaintiff Ana Isabel Moreno ("Plaintiff"), pursuant to Rule 12(f)

28  of the Federal Rules of Civil Procedure, and as also set forth in Table A below:

*Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704*

**Table A**

| TAC ¶¶ to Strike | Basis for Motion to Strike |
|---|---|
| ¶¶ 2-7 (in their entirety) | Immaterial, impertinent, and scandalous disparate treatment allegations, which are also barred by 9.30.24 Order to Dismiss Without Leave to Amend.<br><br>This Court already found that Plaintiff "has not stated a cognizable sex discrimination claim premised on a disparate treatment theory." Dkt. 36, p. 6:24-25. The Court dismissed Plaintiff's disparate treatment claims "**without leave to amend**." *Id.* at 6:26-27, emphasis added.<br><br>In addition, the allegations pertain to incidents involving other employees, at least one of which occurred in 2018, before Plaintiff was employed at the City (see ¶ 4). Plaintiff's TAC alleges Bruce Sokoloff discriminated and retaliated against her from 2020 to 2022, and none of the allegations involving other employees in ¶¶ 2-7 connect the harassment and discrimination of other employees to Sokoloff.  The allegations are therefore immaterial to Plaintiff's claims and included only for purposes of scandal. |
| ¶ 8 (ln. 18), ¶¶ 23-26 (in their entirety) | Immaterial and impertinent allegations re Sgt. Martinez barred by failure to exhaust administrative remedies as to the employee and particular events. Plaintiff's EEOC complaint only alleges actions by Sokoloff "beginning in December 2020." RJN, Ex. A.<br><br>*See, e.g., Cole v. Antelope Valley Union High Sch. Dist.*, 47 Cal.App.4th 1505, 1515 (1996) ("We conclude [Gov. Code] section 12960 clearly mandates that aggrieved persons set forth in their DFEH complaint the names of *persons* alleged to have committed the unlawful discrimination. In order to bring a civil lawsuit under the FEHA, the defendants must have been named in the caption or body of the DFEH charge."); *Rojo v. Kliger*, 52 Cal.3d 65, 83 (1990) ("[T]he exhaustion requirement serves the important policy interests embodied in the act of resolving disputes and eliminating unlawful employment practices by conciliation."); *Sandhu v. Lockheed Missiles & Space Co.*, 26 Cal.App.4th 846, 858 (1994) (same with EEOC). |
| ¶ 28 (in its entirety) | Immaterial and impertinent allegations barred by failure to exhaust administrative remedies as to pre-December 2020 conduct.  Plaintiff's EEOC Complaint only alleges sexual discrimination by Sokoloff "beginning in December 2020."  RJN, Ex. A. |

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Defendant's Motion to Strike Portions of Plaintiff Ana Isabel Moreno's Third Amended Complaint

12669655.4 PO090-042

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

| | |
|---|---|
| | *See, e.g.*, *Cole v. Antelope Valley Union High Sch. Dist.*, 47 Cal.App.4th 1505, 1515 (1996) ("We conclude [Gov. Code] section 12960 clearly mandates that aggrieved persons set forth in their DFEH complaint the names of persons alleged to have committed the unlawful discrimination. In order to bring a civil lawsuit under the FEHA, the defendants must have been named in the caption or body of the DFEH charge."); *Rojo v. Kliger*, 52 Cal.3d 65, 83 (1990) ("[T]he exhaustion requirement serves the important policy interests embodied in the act of resolving disputes and eliminating unlawful employment practices by conciliation."); *Sandhu v. Lockheed Missiles & Space Co.*, 26 Cal.App.4th 846, 858 (1994) (same with EEOC). |
| ¶ 30 (in its entirety), ¶ 35 (lns. 20-24), ¶¶ 44-47 (in their entirety) | Immaterial and impertinent allegations barred by failure to exhaust administrative remedies as to Cpl. Lara.<br><br>See, e.g., *Cole v. Antelope Valley Union High Sch. Dist.*, 47 Cal.App.4th 1505, 1515 (1996) ("We conclude [Gov. Code] section 12960 clearly mandates that aggrieved persons set forth in their DFEH complaint the names of persons alleged to have committed the unlawful discrimination. In order to bring a civil lawsuit under the FEHA, the defendants must have been named in the caption or body of the DFEH charge."); *Rojo v. Kliger*, 52 Cal.3d 65, 83 (1990) ("[T]he exhaustion requirement serves the important policy interests embodied in the act of resolving disputes and eliminating unlawful employment practices by conciliation."); *Sandhu v. Lockheed Missiles & Space Co.*, 26 Cal.App.4th 846, 858 (1994) (same with EEOC). |
| ¶ 38 (ln. 11) | Immaterial and impertinent disparate treatment allegations barred by 9.30.24 Order to Dismiss Without Leave to Amend.<br><br>The Court found that, "Plaintiff essentially concedes that she has not stated a cognizable sex discrimination claim premised on a disparate treatment theory.  Accordingly, Defendants' motion to dismiss Plaintiff's disparate treatment claims is GRANTED.  **These claims will be dismissed without leave to amend.**" Dkt. 36, at 6:24-27, emphasis added. |
| ¶¶ 39 – 43, 53-54, 58-60 (in their entirety) | Immaterial and impertinent allegations per Court's 9.30.24 Order on Motion to Dismiss (finding no adverse employment actions as to these allegations).<br><br>The Court found the three alleged events are not adverse employment actions: (1) the events on March |

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

| | |
|---|---|
| | 11, 2021 related to arresting and transporting a transient to jail; (2) interfering with Plaintiff's relationship with Officer Lucky, including a direct order that Officer Luckey not take care of Plaintiff while she was home sick with COVID-19; and (3) Sokoloff's order to Plaintiff to report to him and statements informing her that he was responsible for getting Officer Lucky fired.  Dkt. 36, at 12:2-8 & 19-24; see also p. 13:12-17. |
| ¶ 64 (lns. 23-26) | Immaterial allegations (no allegation that Sokoloff was involved in determination to extend Sgt. Gray's probationary period). |
| ¶¶ 8 (lns. 2-3), 82 (ln. 13), 83 (lns. 22-23 & 26-1), 84 (lns. 2-4), 89 (lns. 4-5), 103 (lns. 24-25, & 4), 104 (lns. 6-7), 105 (lns. 10-12), 110 (lns. 7-9) | Immaterial allegations – Plaintiff was not constructively discharged.  See Dkt. 36, at 9:19-20 ("The alleged unwelcome conduct occurred in December 2020, but Plaintiff continued in her position through March 2022, when she voluntarily resigned.") |

The specific provisions subject to this motion to strike, as reflected in Table A, are also set forth in full below:

A.    *Immaterial and impertinent Disparate Treatment Allegations Barred by 9.30.24*

     *Order to Dismiss Without Leave to Amend – Paragraphs 2 – 7 (in their entirety)*

**Page 2, Paragraph 2, in its entirety**:

     The Porterville Police Department ("PPD") and the City of Porterville have a significant problem that they bitterly refuse to acknowledge and correct.  The highest runs of PPD leadership are composed of a "boys' club" of male officers, including current Chief Jake Castellow, who have for years violated the rights of the female police officers, violated the rights of male officers who spoke up for those female officers, and even violated the rights of female citizens.  When these female officers or their male allies have spoken up, formally or informally, men like Chief Castellow and Assistant Chief Dominic Barteau and numerous others have rallied around the violators and orchestrated the firing of the complainants and the ruining of their careers.

**Page 2, Paragraph 3, in its entirety**:

     Now that time has gone on and male officers formerly in "the club" have left or been fired, those male officers are reaching out to the female officers they witnessed being harassed and unlawfully terminated, and they are sharing the

Department's secrets.  For example, a favorite strategy employed by PPD leadership to swiftly dispatch a whistleblower is by catching them in a lie; not necessarily a real lie, but a manufactured one is sufficient. A whistleblower dates and submits a routine report, but a superior officer accuses them of submitting the report a day or two after the day they dated it.  According to the Department leadership, they have falsified official reports and are immediately disciplined or terminated – because lying for a police officer is always grounds for termination.

**Pages 2-3, Paragraph 4, in its entirety**:

    In 2018, a former PPD sergeant and head of the Porterville Police Officers Association was caught red-handed by Tulare County deputies with a 17-year-old Porterville Police Department Explorer.  He was immediately arrested for molesting a minor.  Then-Chief Eric Kroutil claimed in a press release that he was "shocked, saddened and angry that [the sergeant] had tarnished the image of the Porterville Police Department."  The sergeant's "punishment" according to news reports was paid leave pending the outcome of the criminal investigation.

**Page 3, Paragraph 5, in its entirety**:

    In 2020, four female officers filed grievances with the City of Porterville alleging sexual harassment, discrimination, and retaliation.  Those women have claimed that there are many more female officers currently employed by PPD who are suffering but too scared to come forward because they have witnessed what happens to the women who do.

**Page 3, Paragraph 6, in its entirety**:

    The City of Porterville is currently defending an unknown number of civil actions alleging these same causes of action.  Yet in 2022, the City Council unanimously upheld the termination by PPD of a female officer who had made a formal complaint that she was being sexually harassed by a PPD sergeant.  The official reason given by PPD for her firing according to news reports was her alleged lying about her "use of a personal vehicle when traveling to Sacramento to go through basic traffic collision training."

**Page 3, Paragraph 7, in its entirety**:

    The Porterville Police Department's problem is its widespread practice of supporting, retaining, and promoting male officers who sexualize, demean, harass, taunt, and bully female officers with no repercussions or discipline, while unlawfully terminating or forcing out anyone who complains.

///

///

///

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Defendant's Motion to Strike Portions of Plaintiff Ana Isabel Moreno's Third Amended Complaint

**B.** *Allegations Barred by Failure to Exhaust Administrative Remedies as to Sgt. E. Martinez – Paragraphs 8 (ln. 18), 23-26 (in their entirety)*

**Page 3, Paragraph 8, Line 18**:

"…three of her direct supervisors…."

**Pages 5-6, Paragraph 23, in its entirety**:

Sgt. E. Martinez was assigned as her direct supervisor.  Soon afterwards and on several occasions, Sgt. Martinez became angry and yelled at Plaintiff in front of her fellow officers.  The yelling was unwarranted and unprofessional, and humiliated Plaintiff.  She noticed her fellow male officers did not receive public "dressing-downs" from Sgt. Martinez.  Sgt. Martinez would later come to Plaintiff privately and say he had "over-reacted."  However, his pattern of yelling at and insulting Plaintiff in front of her co-workers continued.  Sgt. Martinez did not criticize her male co-workers in front of other employees.

**Page 6, Paragraph 24, in its entirety**:

On December 15, 2019, while attending a social gathering at a fellow PPD officer's house with her children, Plaintiff was met outside by Sgt. Martinez.  Sgt. Martinez appeared to be intoxicated.  He addressed Plaintiff and said that if he told her: "So if I say do this, it means you just do it.  And if I say 'Let's fuck,' it means let's fuck."

**Page 6, Paragraph 25, in its entirety**:

Plaintiff was embarrassed and shocked and did not respond.  A fellow officer who had overheard the exchange quickly ushered her into the house and away from Sgt. Martinez.

**Page 6, Paragraph 26, in its entirety**:

In the days and weeks following this incident, Plaintiff never addressed it with Sgt. Martinez, as he was her direct supervisor and she feared he would become angry or retaliate if she mentioned it.  However, she learned that Sgt. Martinez had been telling fellow male officers to be "careful" around Plaintiff because she was "the type who would file a complaint," causing Plaintiff to be alienated from her fellow officers.

///

///

///

///

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Defendant's Motion to Strike Portions of Plaintiff Ana Isabel Moreno's Third Amended Complaint

12669655.4 PO090-042

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

*C. Immaterial and impertinent Allegations Barred by Failure to Exhaust Administrative Remedies as to Pre-December 2020 Conduct – Paragraph 28 (in its entirety)*

**Page 6, Paragraph 28, in its entirety**:

However, Sokoloff soon began making demeaning sexual comments and inappropriate advances to Plaintiff.  For example, on April 19, 2020, after Plaintiff arrested a man at Veteran's Park for public masturbation, Sokoloff messaged Plaintiff, "He may think of u next time he plays with himself."  On May 17, 2020, Sokoloff texted Plaintiff a picture of a beer and wrote, "When u don't have your kids after work I'll share one with u."

*D. Immaterial and impertinent Allegations Barred by Failure to Exhaust Administrative Remedies as to Cpl. Lara – Paragraphs 30 (in its entirety), 35 (lns. 20-24), 44-47 (in their entirety)*

**Pages 6-7, Paragraph 30, in its entirety**:

During this same time period, Corporal Enrique Lara was her other supervisor.  Cpl. Lara initially was openly hostile to Plaintiff.  He would ignore her when she asked him a question, acting as though she was not speaking to him, and then walk away.  Plaintiff never saw Cpl. Lara ignore male officers when they spoke to him.  As with Sgt. Martinez, Plaintiff did not initially understand why Cpl. Lara treated her this way, in a manner that he did not treat similarly situated male officers.

**Page 8, Paragraph 35, lines 20-24**:

Because he was her supervisor, and because Plaintiff had been experiencing hostility and then unwanted sexual advances from her other supervisor, Cpl. Lara, described more fully below, Plaintiff was denied the normal professional mentoring relationship that male PPD junior officers enjoyed with their supervisors.

**Pages 10-11, Paragraph 44, in its entirety**:

In addition to Sgt. Martinez' and Sokoloff's sex-based harassment, Cpl. Lara went from giving Plaintiff "the silent treatment" to sending her unsolicited pictures and messages asking her to spend time alone with him beginning in or around December 2020/January 2021.  Plaintiff declined his requests, or sometimes did not respond to avoid having to decline.

///

///

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

**Page 11 Paragraph 45, in its entirety**:

On or around February 23, 2021, Cpl. Lara confronted Plaintiff at work about not replying to a video he sent her the previous day or to a personal, inappropriate message he had sent the day before that. He wanted Plaintiff to explain why she had not responded to his personal overtures, which made Plaintiff extremely uncomfortable.

**Page 11, Paragraph 46, in its entirety**:

On or around March 1, 2021, Plaintiff documented that Cpl. Lara was ignoring her because she had not responded to several personal, inappropriate messages from him the weekend prior. His hostile pattern of refusing to respond to her work-related inquiries interfered with her ability to learn and do her job.

**Page 11, Paragraph 47, in its entirety**:

Later, on or around May 14, 2021, Cpl. Lara sent Plaintiff a disturbing and repulsive video of himself naked from the waist up, drinking a beer, and asking her to come to his residence to swim alone with him. Plaintiff declined.

    *E. Irrelevant Allegations Barred by Order to Dismiss Disparate Treatment Claim*

       *Without Leave to Amend – Paragraph 38 (ln. 11)*

**Page 9, Paragraph 38, line 11**:

"…held to a different standard than her male co-workers…"

    *F. Immaterial and impertinent Allegations per Court's 9.30.24 Order on Motion to*

       *Dismiss (no adverse employment action) – Paragraphs 39 – 43, 53-54, 58-60 (in*

       *their entirety)*

**Page 9, Paragraph 39, in its entirety**:

The next day, March 11, 2021, Plaintiff was working night shift, and Sokoloff began hazing her about not making as many arrests as he thought she should. He taunted and belittled her, asking if he needed to go out and find her an arrest for her since she wasn't able to make an arrest herself. Then he warned her that he was going to find a "nasty transient" for her to arrest and deny her a transport request. Sokoloff knew that Plaintiff had a K-9 in the back of her vehicle that shift. Standard operating procedure ("SOP") at PPD is that K-9 units may not transfer arrestees because those units only have the front passenger seat available for transport, and that is considered inherently unsafe to place to arrestees in the front seat while the officer drives. PPD SOP requires a caged transport unit to be dispatched to the scene when a K-9 unit makes an arrest. The only time k-9 units may transfer an arrestee is under exigent circumstances (i.e., no other unit is available), and then only if the arrestee in coherent and cooperative. Therefore, Sokoloff was threatening to intentionally violate PPD safety protocol and place

Plaintiff at unreasonable risk of work-related injury.

**Pages 9-10, Paragraph 40, in its entirety**:

About an hour before the end of her shift, Sokoloff radioed Plaintiff and ordered her to come to his location. When Plaintiff arrived, Sokoloff was with an intoxicated male transient. The transient and the areas he frequented were well-known to PPD officers. This particular detainee was known to wear clothing that had been repeatedly self-soiled. On this occasion, his pants sagged and exposed his genitalia and buttocks. It was clear to Plaintiff that Sokoloff had searched and found this man to make good on his earlier threat. Sokoloff then left Plaintiff alone at the scene, ordering her to perform a field sobriety screen and transport him to jail. The rear seat of Sokoloff's vehicle was free at the time, and he would have been able to transport the individual safely, unlike Plaintiff. Sokoloff's order put Plaintiff in an inherently dangerous position.

**Page 10, Paragraph 41, in its entirety**:

Plaintiff struggled alone to clear her front passenger area of gear while holding onto the man, who was so intoxicated that Plaintiff feared he would fall down and hurt himself or that she would not be able to get him back up. While enroute, he became agitated and rambled incoherently while making jerking body movements. Plaintiff feared that he would attempt to hurt either himself or her.

**Page 10, Paragraph 42, in its entirety**:

This incident was egregious and unconscionable in light of PPD policy that requires supervisors to protect the safety of all officers, particularly their subordinates. Sokoloff knowingly and unreasonably placed Plaintiff at high risk of a workplace injury. Moreover, this risk was completely unnecessary given that Sokoloff could easily have 1) transported the inebriated transient safely in the back seat of his unit, or 2) allowed Plaintiff to call for a transport in another vehicle. Plaintiff now recognized that Sokoloff was willing to jeopardize her safety just to harass and punish her in retaliation for her refusing his sexual overtures.

**Page 10, Paragraph 43, in its entirety**:

After leaving Plaintiff alone with the transient, Sokoloff went back to the Department and told Plaintiff's fellow officers what he had done to Plaintiff, thereby broadcasting to Plaintiff's peers that he had targeted her for maltreatment and she was therefore an appropriate target of ridicule, maltreatment, and humiliation.

**Pages 12-13, Paragraph 53, in its entirety**:

On August 18, 2021, Plaintiff was sent home ill and ordered to take a COVID test. Before she left, Sgt. Lara asked her if Officer Luckey was at her house (the Department knew that she and Officer Luckey were living together during the week), and she replied that he was. Later that day, Plaintiff and Officer Luckey went together to get tested for COVID because Plaintiff has gotten significantly sicker and could not drive the 45 minutes to the clinic alone. Plaintiff tested positive and Officer Luckey tested negative. Sokoloff called Plaintiff while she and Officer Luckey were driving home from the clinic. After hearing the test results, he grew very angry with Plaintiff for being driven to the clinic instead of going alone. He then told Plaintiff that Officer Luckey was not allowed to be at

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

her house and or to have any contact with her. He told Plaintiff to put him on speaker so that Officer Luckey could hear, and angrily expressed his unwarranted disapproval of both of them and their actions, despite neither of them having done anything wrong – they had not violated any PPD, City, or State COVID or quarantine protocol. Sokoloff added that if anyone saw them in Porterville together, they would be in trouble and even possibly fired.

**Page 13, Paragraph 54, in its entirety**:

To Plaintiff's knowledge, no other employee at PPD who contracted COVID was ever ordered to stop cohabitating or cease physical contact with their significant other.

**Page 14, Paragraph 58, in its entirety**:

The next day, September 31, 2021, Plaintiff was directed to report to Sokoloff, who had come in on his day off just to meet with her. He was alone in his office and informed her that he was the one who had initiated and conducted the Internal Affairs investigation that resulted in Officer Luckey's termination. Sokoloff told Plaintiff that Department administrators were now keeping an eye on her; that she would be under scrutiny for possible negative responses to Officer Luckey's termination.

**Page 14, Paragraph 59, in its entirety**:

Sokoloff then shifted the subject and began telling Plaintiff that he had significant influence in the Department because of his close friendship with Captain Barteau. He said that although "the Administration was worried" about her reaction to Officer Luckey's termination, he believed she could still promote and potentially have a successful career there. Plaintiff understood that he was telling her that if she wanted to continue her career at the PPD, she needed to make Sokoloff happy and act like she was not upset with or mistrustful of him. Plaintiff left that meeting feeling sick to her stomach.

**Page 14, Paragraph 60, in its entirety**:

This conversation had a devasting effect on Plaintiff. Her significant other had just been summarily terminated for undisclosed reasons after performing at a high level and being in discussions about a promotion to the detective unit. And now she was being ordered to meet with Sokoloff just so he could tell her that he was responsible for Luckey's termination, that he was influential with the Department higher-ups, and that those higher-ups had doubts about her loyalty and were watching here. She felt alone and that everyone was against her and assuming the worst about her.

G. *Irrelevant and Immaterial Allegations; No Allegation that Sokoloff Was Involved*

*in Determination – Paragraph 64 (lns. 23-26)*

**Page 15, Paragraph 64, lines 23-26**:

"At the time, Sgt. Gray was nearly finished with his probationary period as a recently promoted sergeant. Within days of this meeting, he received word that his probationary period had been extended for unknown reasons. He understood that

10

being placed on a longer probation was in retaliation intervening to stop the harassment"

H. *Irrelevant and Immaterial Allegations; Plaintiff was not Constructively Discharged – Paragraphs 8 (lns. 2-3), 82 (ln. 13), 83 (lns. 22-23 & 26-1), 84 (lns. 2-4), 89 (lns. 4-5), 103 (lns. 24-25 & 4), 104 (lns. 6-7), 105 (lns. 10-12), & 110 (lns. 7-9)*

**Page 4, Paragraph 8, lines 2-3**:

"…that forced her to resign before her career was ruined by being fired."

**Page 19, Paragraph 82, line 13**:

"…from three male supervisors…"

**Pages 19-20, Paragraph 83, lines 22-23, & 26-1**:

"…career with PPD because the same supervisors from whom Plaintiff should have been able to seek guidance and support were also the perpetrators who were discriminating and retaliating….In effect, the retaliation and harassment to which Plaintiff was being subjected resulted in Plaintiff's constructive discharge."

**Page 20, Paragraph 84, lines 2-4**:

"The circumstances surrounding Plaintiff's constructive discharge give rise to the inference of sex discrimination based on the fact that, due to her status as a woman, Plaintiff was viewed by her male supervisors…"

**Page 21, Paragraph 89, lines 4-5**:

"In effect, the retaliation and harassment to which she was being subjected resulted in Plaintiff's constructive discharge."

**Pages 22-23, Paragraph 103, lines 24-25, & 4**:

"…sex-based harassment from three male supervisors to which her male co-workers were not subjected….her male superiors, and endure the anger caused by her refusal to submit to them sexually."

**Page 23, Paragraph 104, lines 6-7**:

"…because the same supervisors from whom Plaintiff should have been able to seek guidance and support were also her perpetrators."

**Page 23, Paragraph 105, lines 10-12**:

"…Plaintiff's constructive discharge…Plaintiff was viewed by her male supervisors…"

**Page 24, Paragraph 110, lines 7-9**:

"In effect, the retaliation and harassment to which she was being subjected resulted in Plaintiff's constructive discharge."

This motion is made on the grounds that the provisions above, which are, *inter alia*, expressly not part of any cause of action in this case by virtue of the Court's ruling on Defendants' Motion to Dismiss the Second Amended Complaint, are redundant, immaterial, impertinent, scandalous and cumulative, and have no possible bearing on the subject matter of the litigation. Certain allegations pre-date Plaintiff's employment with the City.

This motion is based on this Notice of Motion, the accompanying Memorandum of Points & Authorities, the Request for Judicial Notice, and upon such further evidence and argument as the Court may permit at the hearing on this Motion.

Dated:  December 6, 2024                    LIEBERT CASSIDY WHITMORE

By:    */s/ Jesse J. Maddox*

Jesse J. Maddox
Phil Bui
Attorneys for Defendant CITY OF
PORTERVILLE

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Defendant's Motion to Strike Portions of Plaintiff Ana Isabel Moreno's Third Amended Complaint
12669655.4 PO090-042

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff sued Defendant City of Porterville ("City") based on actions related to her employment as a police officer with the City. Plaintiff contends her former supervisor Lieutenant Bruce Sokoloff ("Sokoloff") retaliated against her for "rejecting his sexual overtures," forcing Plaintiff to eventually quit her employment. Plaintiff asserts claims based upon Title VII of the Civil Rights Act of 1964 ("Title VII"), the Fair Employment and Housing Act ("FEHA"), and violations of the United States Constitution. On September 30, 2024, the Court granted Plaintiff leave to file a third amended complaint (the "TAC") for a "final opportunity." Dkt. 36, 20:25. Plaintiff filed the TAC, but included allegations that are alleged, *inter alia*, (i) notwithstanding the Court's order to dismiss Plaintiff's sex harassment claim based on disparate treatment without prejudice; (ii) redundant, immaterial, and impertinent allegations related to conduct by officers other than Sokoloff – to which Plaintiff failed to include as part of her EEOC/DFEH complaint such that she failed to exhaust her administrative remedies as to such allegations; (iii) irrelevant and immaterial allegations related to conduct the Court already found that no adverse employment actions occurred; and (iv) notwithstanding the Court's finding that Plaintiff voluntarily resigned and was not constructively discharged. Accordingly, this motion to strike should be granted.

### II.    RELEVANT ALLEGATIONS AND FACTUAL BACKGROUND

#### A.    SUMMARY OF ALLEGATIONS IN TAC

##### 1.    Plaintiff's Allegations Against Bruce Sokoloff

In September 2019, Plaintiff accepted a position as a Police Officer with the City. TAC at ¶ 22. Between March 1, 2020, and December of 2020, she reported to Bruce Sokoloff ("Sokoloff") and grew to consider him as a trusted mentor. *Id*. at ¶ 27.  She alleges, however, Sokoloff "soon began making demeaning sexual comments and inappropriate advances to Plaintiff. *Id*. at ¶ 28. On April 19, 2020, after she arrested a man for public masturbation, she alleges Sokoloff messaged Plaintiff: "He may think of u next time he plays with himself." *Id*. Then, on May 17, 2020, Sokoloff texted Plaintiff a picture of a beer and wrote, "When u don't

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

1  have your kids after work I'll share one with u." *Id.* The TAC does not describe any response she

2  made to Sokoloff's messages, or whether she reported his statements to anyone at the Police

3  Department.

4      Plaintiff claims that, throughout December 2020, Sokoloff engaged in a "persistent and

5  unwelcome romantic pursuit" of Plaintiff. TAC, ¶ 31. He texted Plaintiff to have a drink outside

6  of work, that he was alone that weekend, and that if she came to his house that he would not tell

7  his wife. *Id.* Plaintiff went to Sokoloff's house for dinner and drinks on December 12, 2020, and

8  brought a friend because she felt uncomfortable and did not want to be alone with him. *Id.*

9      On December 28, 2020, Sokoloff began what Plaintiff calls "a three-day siege" of

10  harassing text messages attempting to get Plaintiff to go away alone with him out of town over

11  New Year's weekend, which made Plaintiff "extremely uncomfortable" because he was her

12  supervisor. TAC at ¶¶ 32-34. Plaintiff alleges she experienced fear and apprehension when going

13  to work because of Sokoloff's advances. *Id.* at ¶ 35.

14      Plaintiff alleges Sokoloff's intentions toward her started to change in "mid to late

15  January" 2021, shortly after she rebuffed him. TAC, at ¶ 36. For example, Plaintiff alleges that on

16  February 11, 2021, Sokoloff belittled Plaintiff in front of her colleagues and falsely accused her

17  of gross incompetence by telling her she "can't do shit right." TAC at ¶ 37.

18      Between March and September of 2021, Sokoloff "created an increasingly hostile work

19  environment" after it became known that Plaintiff and Officer Anthony Luckey "were

20  romantically involved." TAC, at ¶¶ 49. On March 10, 2021, Sokoloff stated a 5150 mental health

21  hold report Plaintiff prepared was "not acceptable" such that Plaintiff alleged she was being "held

22  to a different standard than her male co-workers." *Id.* at ¶ 38. On March 11, 2021, Sokoloff

23  warned Plaintiff that he was going to find a "nasty" transient for her to arrest and transport to the

24  jail. TAC ¶ 39. About an hour before her shift ended, Sokoloff radioed Plaintiff and ordered her

25  to his location. Plaintiff alleges Sokoloff put her in "a dangerous situation" by leaving Plaintiff

26  alone at the scene, directing her to evaluate the transient for being under the influence, and to

27  transport the suspect to jail. TAC, at ¶ 40. The transient's pants sagged, exposing his penis and

28  behind. *Id.* Plaintiff had a canine in the back of her vehicle; therefore, she had to put the transient

in the front seat of her vehicle. TAC ¶¶ 39-41. After leaving Plaintiff alone with the transient, Sokoloff went back to the Police Department and told Plaintiff's coworkers what he had done. TAC ¶ 43.

On July 21, 2021, Sokoloff told Plaintiff he needed her camera to perform a property audit after she worked on a traffic collision report and needed to take photographs. TAC, at ¶ 50. Around this time, Sokoloff told Plaintiff that she had "changed" and accused her of missing work a lot. *Id.* at ¶ 51. On August 1, 2021, Sokoloff messaged Plaintiff and informed her he was being promoted from sergeant to Lieutenant. *Id.* at ¶ 52.

On August 18, 2021, Plaintiff was sent home ill and ordered to take a COVID test. TAC, at ¶ 53. She went with Officer Luckey to get tested for COVID; she tested positive, and he tested negative. *Id.* She told Sokoloff the results, and he ordered that Officer Luckey was not allowed to be at her house or to have any contact with her. *Id.*

On October 11, 2021, Sokoloff ordered Plaintiff to report to his office, where he wrote her up with a Personnel Incident Report ("PIR") because her body camera was not on during a September 28 traffic stop, and because she had not immediately booked the license plate from the traffic stop into the Evidence System. TAC, at ¶ 61. During the meeting, Sokoloff told Plaintiff, "I foresee that in the near future you're going to get fired, just like Luckey did." TAC, at ¶ 62.

Plaintiff contends Sokoloff continued a "retaliatory campaign" through the fall of 2021 and winter of 2022, but Plaintiff "kept a low profile." TAC, at ¶ 68. On January 29, 2022, Plaintiff requested a two-week vacation in February. *Id.* at ¶ 70. On February 3, 2022, her vacation request was approved by Cpl. Ochoa. *Id.* Later that day, Lieutenant Gurule asked Plaintiff about a rumor that she had an upcoming interview with another agency, and Plaintiff informed him that she did have an interview but was just weighing her options. *Id.* at ¶ 71. Later that afternoon, Plaintiff was told that her vacation request had been canceled by Lt. Gurule because he was suspicious that Plaintiff would serve two-weeks notice while on vacation. *Id.* at ¶ 72. Sokoloff called Plaintiff into his office and told her he was canceling her vacation but that she could submit a new request for a one-week vacation in March. *Id.* at ¶ 73.

///

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

On February 4, 2022, Plaintiff's immediate supervisors told her there would be a "routine administrative review of an incident that occurred that day in which her K-9 partner bit a plain-clothes TCSO detective while apprehending a suspect hiding in a slough." TAC ¶ 74. Sokoloff insisted that an internal affairs investigation commence. *Id*. Plaintiff was cleared in the investigation. TAC ¶ 76. Plaintiff felt she had no choice but to resign before Sokoloff allegedly "destroyed her professional reputation." TAC, at ¶ 8, 77. Plaintiff's last day with the City was March 26, 2022. TAC, at ¶ 78.

### 2.    Plaintiff's Allegations Against Other Supervisors

For the first time in any forum – including this lawsuit and her administrative complaint to the EEOC – Plaintiff now contends she "was subjected to repeated unwelcome sexual advances" from two more direct supervisors while employed by the City. *Id*. at ¶ 8.[1] She alleges that Sgt. E. Martinez was assigned as her direct supervisor, and that he yelled at Plaintiff in front of her fellow officers, but that he did not criticize her male co-workers in front of other employees. *Id*. at ¶ 23. She alleges that on December 15, 2019, Sgt. Martinez spoke to Plaintiff while outside at a social gathering and said: "So if I say do this, it means you just do it.  And if I say 'Let's fuck,' it means let's fuck." *Id*. at ¶ 24. Plaintiff never addressed this incident with Sgt. Martinez. *Id*. at ¶ 25. She alleged Sgt. Martinez had been telling fellow male officers to be "careful" around Plaintiff because she was "the type who would file a complaint" and therefore Plaintiff was alienated from her fellow officers because of these comments. *Id*. at ¶ 26.

Plaintiff also now alleges she experienced hostility and unwanted sexual advances from another supervisor, Corporal Enrique Lara.  She claims Cpl. Lara was "initially openly hostile to Plaintiff" and would ignore her when she asked him questions, but she did not see him ignore male officers. TAC, ¶ 30. Beginning in or around December 2020/January 2021, Plaintiff alleges Cpt. Lara sent her unsolicited pictures and messages asking her to spend time alone with him, to which she did not respond. *Id*. at ¶ 44. On March 1, 2021, Plaintiff alleges she "documented that Cpl. Lara was ignoring her because she had not responded" to his inappropriate messages. *Id*. at ¶

---

[1] See Defendant's Request for Judicial Notice, Ex. A [July 12, 2022 EEOC formal complaint of discrimination and retaliation].

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

46. On May 14, 2021, Cpl. Lara sent Plaintiff a video of himself shirtless, drinking a beer and asking her to come to his residence to swim alone with him, which she declined. *Id.* at ¶ 47.

On September 28, 2021, after returning to patrol, Plaintiff made a traffic stop of a vehicle with a license plate belonging to a different vehicle. TAC, at ¶ 56. Her body camera was not working, and she explained to Sgt. Lara that she did not know why it was not recording and proceeded with her investigation. She removed and placed the license plate in the PPD Evidence Locker. *Id.*

### III.    **PROCEDURAL HISTORY**

On April 6, 2023, Plaintiff filed and served her initial complaint against Defendant. Dkt. 1. On August 7, 2023, Plaintiff filed and served her First Amended Complaint ("FAC"). Plaintiff filed and served her Second Amended Complaint ("SAC") on September 6, 2023. On September 27, 2023, Defendant filed a motion to dismiss the SAC.

On September 30, 2024, the Court entered its order granting Defendants' motion to dismiss the SAC.  Dkt. 36. As to Plaintiff's first (Title VII) and fifth claims (violation of FEHA) for sex discrimination, the Court found that, "Plaintiff essentially concedes that she has not stated a cognizable sex discrimination claim premised on a disparate treatment theory.  Accordingly, Defendants' motion to dismiss Plaintiff's disparate treatment claims is GRANTED.  **These claims will be dismissed without leave to amend.**" Dkt. 36, at 6:24-27, emphasis added. Further, as to Plaintiff's sex discrimination claims based on a hostile work environment theory, the Court granted Defendant's motion to dismiss "with leave to amend." *Id.* at 10:5-6.

As to Plaintiff's second and sixth claims (retaliation), the Court held that at the pleading stage Plaintiff sufficiently alleged the existence of an adverse employment action only as to three of Plaintiff's six alleged adverse employment actions described in the SAC: (1) when she received a formal write up in November 2021; (2) her vacation request was cancelled in February 2022; and (3) she was subjected to an internal affairs investigation in February 2022. Dkt. 36, at

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

1   14:4-7.[2] However, the Court held that Plaintiff failed to sufficiently allege causation as to any of

2   the adverse employment actions and dismissed the claims with leave to amend. *Id.* at p. 15.

3   Similarly, as to Plaintiff's third cause of action for deprivation of civil rights in violation of 42

4   U.S.C. § 1983, the Court held that Plaintiff's allegations were conclusory and insufficient to state

5   a claim against the City based on ratification and dismissed with leave to amend. *Id.* at 16.  On

6   November 8, 2024, Plaintiff filed the TAC. Dkt. 42.

7   **IV.    <u>LEGAL STANDARD</u>**

8           Under Rule 12(f) of the Federal Rules of Civil Procedure, a "court may strike from a

9   pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

10  A matter is "immaterial" if it "has no essential or important relationship to the claim for relief or

11  the defenses being pleaded," and "impertinent" if it "consists of statements that do not pertain,

12  and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527

13  (9th Cir. 1993), *rev'd on other grounds,* 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455

14  (1994) (internal quotation marks omitted).  "[W]here the motion may have the effect of making

15  the trial of the action less complicated, or have the effect of otherwise streamlining the ultimate

16  resolution of the action, the motion to strike will be well taken." *California ex rel. State Lands*

17  *Comm'n v. United States,* 512 F.Supp. 36, 38 (N.D. Cal. 1981).

18  **V.    <u>LEGAL ARGUMENT</u>**

19          Here, Plaintiff is suing the City for purported gender-based discrimination and retaliation,

20  culminating in what she alleges to be the constructive termination of her employment. What

21  events occurred prior to Plaintiff's employ with the City, or how the City responded to other

22  claims filed for its employees, is irrelevant to Plaintiff's current action against the City.

23  Similarly, a substantial portion of the allegations in the TAC were rendered irrelevant and

24  immaterial to the remaining issues in this case following the Court's ruling on Defendants'

25

26  _____

    [2] The Court held the other three alleged events do not rise to the level of an adverse employment
    action for: (1) the events on March 11, 2021 related to arresting and transporting a transient to jail

27  on her own; (2) interfering with Plaintiff's relationship with Officer Luckey, including a direct
    order that Officer Luckey not take care of Plaintiff while she was home sick with COVID-19; and

28  (3) Sokoloff's order to Plaintiff to report to him and statements informing her that he was
    responsible for getting Officer Luckey fired. See Dkt. 36, at 12:2-8 & 19-20.

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

motion to dismiss the SAC. Dkt. 36. If the Court were to allow such immaterial and impertinent

allegations to remain within the operative pleading, this would likely confuse the issues and the

jury and is improper.  These concerns justify striking the allegations for the reasons set forth

below in Table A.

**Table A**

| TAC ¶¶ to Strike | Basis for Motion to Strike |
|---|---|
| ¶¶ 2-7 (in their entirety) | Immaterial, impertinent, and scandalous disparate treatment allegations, which are also barred by 9.30.24 Order to Dismiss Without Leave to Amend.<br><br>This Court already found that Plaintiff "has not stated a cognizable sex discrimination claim premised on a disparate treatment theory." Dkt. 36, p. 6:24-25. The Court dismissed Plaintiff's disparate treatment claims "**without leave to amend**." *Id.* at 6:26-27, emphasis added.<br><br>In addition, the allegations pertain to incidents involving other employees, at least one of which occurred in 2018, before Plaintiff was employed at the City (see ¶ 4). Plaintiff's TAC alleges Bruce Sokoloff discriminated and retaliated against her from 2020 to 2022, and none of the allegations involving other employees in ¶¶ 2-7 connect the harassment and discrimination of other employees to Sokoloff.  The allegations are therefore immaterial to Plaintiff's claims and included only for purposes of scandal. |
| ¶ 8 (ln. 18), ¶¶ 23-26 (in their entirety) | Immaterial and impertinent allegations re Sgt. Martinez barred by failure to exhaust administrative remedies as to the employee and particular events. Plaintiff's EEOC complaint only alleges actions by Sokoloff "beginning in December 2020." RJN, Ex. A.<br><br>*See, e.g., Cole v. Antelope Valley Union High Sch. Dist.*, 47 Cal.App.4th 1505, 1515 (1996) ("We conclude [Gov. Code] section 12960 clearly mandates that aggrieved persons set forth in their DFEH complaint the names of *persons* alleged to have committed the unlawful discrimination. In order to bring a civil lawsuit under the FEHA, the defendants must have been named in the caption or body of the DFEH charge."); *Rojo v. Kliger*, 52 Cal.3d 65, 83 (1990) ("[T]he exhaustion requirement serves the important policy interests embodied in the act of resolving disputes and eliminating unlawful employment practices by conciliation."); *Sandhu v. Lockheed Missiles & Space Co.*, 26 Cal.App.4th 846, 858 (1994) (same with EEOC). |

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

| | |
|---|---|
| ¶ 28 (in its entirety) | Immaterial and impertinent allegations barred by failure to exhaust administrative remedies as to pre-December 2020 conduct.  Plaintiff's EEOC Complaint only alleges sexual discrimination by Sokoloff "beginning in December 2020."  RJN, Ex. A.<br><br>*See, e.g.*, *Cole v. Antelope Valley Union High Sch. Dist.*, 47 Cal.App.4th 1505, 1515 (1996) ("We conclude [Gov. Code] section 12960 clearly mandates that aggrieved persons set forth in their DFEH complaint the names of persons alleged to have committed the unlawful discrimination. In order to bring a civil lawsuit under the FEHA, the defendants must have been named in the caption or body of the DFEH charge."); *Rojo v. Kliger*, 52 Cal.3d 65, 83 (1990) ("[T]he exhaustion requirement serves the important policy interests embodied in the act of resolving disputes and eliminating unlawful employment practices by conciliation."); *Sandhu v. Lockheed Missiles & Space Co.*, 26 Cal.App.4th 846, 858 (1994) (same with EEOC). |
| ¶ 30 (in its entirety), ¶ 35 (lns. 20-24), ¶¶ 44-47 (in their entirety) | Immaterial and impertinent allegations barred by failure to exhaust administrative remedies as to Cpl. Lara.<br><br>See, e.g., *Cole v. Antelope Valley Union High Sch. Dist.*, 47 Cal.App.4th 1505, 1515 (1996) ("We conclude [Gov. Code] section 12960 clearly mandates that aggrieved persons set forth in their DFEH complaint the names of persons alleged to have committed the unlawful discrimination. In order to bring a civil lawsuit under the FEHA, the defendants must have been named in the caption or body of the DFEH charge."); *Rojo v. Kliger*, 52 Cal.3d 65, 83 (1990) ("[T]he exhaustion requirement serves the important policy interests embodied in the act of resolving disputes and eliminating unlawful employment practices by conciliation."); *Sandhu v. Lockheed Missiles & Space Co.*, 26 Cal.App.4th 846, 858 (1994) (same with EEOC). |
| ¶ 38 (ln. 11) | Immaterial and impertinent disparate treatment allegations barred by 9.30.24 Order to Dismiss Without Leave to Amend.<br><br>The Court found that, "Plaintiff essentially concedes that she has not stated a cognizable sex discrimination claim premised on a disparate treatment theory.  Accordingly, Defendants' motion to dismiss Plaintiff's disparate treatment claims is GRANTED.  **These claims will be dismissed without leave to amend.**" Dkt. 36, at 6:24-27, emphasis added. |

| ¶¶ 39 – 43, 53-54, 58-60 (in their entirety) | Immaterial and impertinent allegations per Court's 9.30.24 Order on Motion to Dismiss (finding no adverse employment actions as to these allegations). The Court found the three alleged events are not adverse employment actions: (1) the events on March 11, 2021 related to arresting and transporting a transient to jail; (2) interfering with Plaintiff's relationship with Officer Lucky, including a direct order that Officer Luckey not take care of Plaintiff while she was home sick with COVID-19; and (3) Sokoloff's order to Plaintiff to report to him and statements informing her that he was responsible for getting Officer Lucky fired.  Dkt. 36, at 12:2-8 & 19-24; see also p. 13:12-17. |
|---|---|
| ¶ 64 (lns. 23-26) | Immaterial allegations (no allegation that Sokoloff was involved in determination to extend Sgt. Gray's probationary period). |
| ¶¶ 8 (lns. 2-3), 82 (ln. 13), 83 (lns. 22-23 & 26-1), 84 (lns. 2-4), 89 (lns. 4-5), 103 (lns. 24-25, & 4), 104 (lns. 6-7), 105 (lns. 10-12), 110 (lns. 7-9) | Immaterial allegations – Plaintiff was not constructively discharged.  See Dkt. 36, at 9:19-20 ("The alleged unwelcome conduct occurred in December 2020, but Plaintiff continued in her position through March 2022, when she voluntarily resigned.") |

## VI. **CONCLUSION**

For the foregoing reasons, the City respectfully asks the Court to strike the allegations specified in this motion pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

Dated: December 6, 2024                                   LIEBERT CASSIDY WHITMORE

_/s/ Jesse J. Maddox_

By:    Jesse J. Maddox
       Phil Bui
       Attorneys for Defendant CITY OF
       PORTERVILLE

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Defendant's Motion to Strike Portions of Plaintiff Ana Isabel Moreno's Third Amended Complaint

12669655.4 PO090-042