Lawrence J. King, Esq., #120805
LAW OFFICES OF LAWRENCE J. KING
11 Western Avenue
Petaluma, CA 94952
Telephone:  707-769-9791
Fax:  707-769-9253
Email:  kingesq@pacbell.net

Attorneys for Plaintiff Ana Isabel Moreno

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| ANA ISABEL MORENO,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF PORTERVILLE,<br><br>    Defendant. | CASE NO. 1:23-cv-00541 BAM<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT UNDER RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES** |

Plaintiff Ana Isabel Moreno respectfully submits this her opposition to Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint ("TAC") under Federal Rule of Civil Procedure 12(b)(6).

\\\

\\\

\\\

\\\

\\\

\\\

\\\

\\\

1
**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION……………………………………………………………….…..5

II. PROCEDURAL HISTORY……………………………………………………………...6

III. LEGAL STANDARD……………………………………………………….…………8

IV. LEGAL ARGUMENT……………………………………………………………....9

    A. PLAINTIFF'S FIRST AND FOURTH CLAIMS ARE BASED ON A SEXUALLY HOSTILE WORK ENVIRONMENT, NOT DISPARATE TREATMENT…………………………………………….…9

    B. PLAINTIFF'S FIRST AND FOURTH CLAIMS ARE JURISDICTIONALLY SOUND AND SUFFICIENTLY PLEADED……..…….9

        1. Failure to Exhaust Administrative Remedies……………………..…….9

        2. The TAC Pleads Sufficient Facts for Plausible Claims of a Sexually Hostile Work Environment…………………….…11

    C. CONSTRUED IN THE LIGHT MOST FAVORABLE TO PLAINTIFF, THE TITLE VII AND FEHA RETALIATION CLAIMS PLEAD A PLAUSIBLE CAUSAL CONNECTION BETWEEN HER PROTECTED ACTIVITY, THE SUBSEQUENT RETALIATION, AND HER CONSTRUCTIVE DISCHARGE…………………………………..16

    D. PLAINTIFF'S THIRD CLAIM PLEADS *MONELL* LIABILITY BASED ON LONGSTANDING/WIDESPREAD PRACTICE OR CUSTOM, NOT RATIFICATION…………………………………………...18

V. CONCLUSION…………………………………………………………………….20

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)……………………………………………….…...8

*Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007)……………….……………………………….8

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)……….…………………………...…14

*Christian v. Umpqua Bank*, 984 F.3d 801(9th Cir. 2020)……….……………….……...…12, 13

*Davis v. Team Elec. Co.*, 520 F.3d 1080 (9th Cir. 2008)……….………………………..….…12

*Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104 (9th Cir. 1998)……………………….….……13

*EEOC v Farmer Bros. Co.*, 31 F.3d 891 (9th Cir. 1994)……….………….……………...…10

*Fried v. Wynn Las Vegas, LLC,* 18 F.4th 643 (9th Cir. 2021)……….…….…….…………..14

*Hunter v. County of Sacramento*, 6562 F.3d 1225 (9th Cir. 2011)…………….....………..19, 20

*Kaplan v. Int'l All. of Theatrical & Stage Emps.*, 525 F.2d 1354 (9th Cir. 1975)…...….……..10

*Little v. Windermere Relocation, Inc.*, 301 F.3d 958 (9th Cir. 2002)…………....…..…12, 14, 15

*Mortimer v. Baca*, 594 F.3d 1086 (9th Cir. 2013)……….…………………….……………20

*Okonowsky v. Garland*, 109 F.4th 1166 (9th Cir. 2024)…………………………..…12, 13, 14, 15

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998)……….……………….……..12

*Oubichon v. North American Rockwell Corporation,* 482 F.2d 569 (9th Cir. 1973)…….....……10

*Polich v. Burlington N., Inc.*, 942 F.2d 1467 (9th Cir. 1991)………………….……………….9

*Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678 (9th Cir. 2017)…………….……….....……14

*Scanlon v. County of Los Angeles*, 92 F.4th 781 (9th Cir. 2024)……….…………….…...…..20

*Scheurer v. Rhodes*, 416 U.S. 232 (1974)……….……………….…….…….……………..8

*Shah v Mount Zion Hosp. & Medical Ctr.,* 642 F.2d 268 (9th Cir. 1981)…….……….…..…...11

*United States v. Webb*, 655 F.2d 977 (9th Cir. 1981)……….……………………………...…9

*Vasquez v. Los Angeles County*, 487 F.3d 1246 (9th Cir. 2007)……….…………….……………9

*Zetwick v. Cnty. of Yolo*, 850 F.3d 436 (9th Cir. 2017)……….……………….……………14

**State Cases**

*Bailey v. San Francisco Dist. Atty's Off.*, 16 Cal.5th 611 (2024)……………………….….16, 17

*Cole v. Antelope Valley Union High Sch. Dist.*, 47 Cal.App.4th 1505 (1996)…….…………10, 11

*Okoli v Lockheed Technical Operations Co.*, 36 Cal. App. 4th 1607 (1995)…………………10, 11

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This case arises from the sexual harassment, sex-based discrimination, and retaliation Plaintiff endured while employed by the Porterville Police Department ("PPD") that forced an end to her law enforcement career with PPD.

As with its first motion to dismiss, much of Defendant's instant motion relies on misconstruing Plaintiff's claims, misstating the factual allegations contained in the complaints, and mischaracterizing the history of the parties' meet and confers.

For example, Defendant urges this Court to dismiss Plaintiff's First and Fourth causes of action for sex-based discrimination in her Third Amended Complaint ("TAC"), which it alleges are based on disparate treatment theory, because said claims are "in direct contravention of this Court's order dismissing Plaintiff's disparate treatment claims without leave to amend" – a damning accusation if it were true. Dkt. 48, at 6:19-21. Defendant's argument here is misleading and wasteful, because Plaintiff's First and Fourth claims are not, nor have they ever been, premised on a theory of disparate treatment. They have always been based on a hostile work environment, as the Court recognized in its September 30, 2024, Order. Moreover, while the Order clearly barred Title VII and FEHA sex-based discrimination *causes of action* based on a theory of disparate treatment, the Court did not bar *factual allegations* that demonstrate disparate treatment or impact but that are offered in support of other causes of action in Plaintiff's complaint, e.g. her Section 1983 cause of action. Disregarding the plain language of the Order and the TAC, Defendant misconstrues them both in order to cast Plaintiff as a recalcitrant in contempt of the Court.

To the contrary, Plaintiff heeded this Court's Order very closely. Plaintiff and Plaintiff's counsel took painstaking steps to remedy the deficiencies identified by the Court. While Defendant argues here and in its pending Motion to Strike that the newly alleged facts in the TAC are improper for various reasons, they were required in order to satisfy the pleading requirements as set forth by the Court in its Order. The allegations may be new to the TAC, they are not at all

1  "new." Plaintiff extensively documented and saved evidence of the treatment she received while
2  at PPD, including the texts and photos of the of sex-based harassment, discrimination, and
3  retaliation from her supervisors Sgt. Martinez and Cpl. Lara, as well as Bruce Sokoloff. The
4  veracity of her allegations in the TAC will be apparent as soon as the parties can begin discovery.
5      If Plaintiff's counsel erred in his belief that sufficient facts were pleaded in the Second
6  Amended Complaint ("SAC") to support that complaint, Plaintiff respectfully requests that she be
7  allowed to follow the instruction provided in this Court's Order and present the additional facts
8  that support the claims in her TAC. Moreover, consistent with construing the TAC in the light
9  most favorable to Plaintiff, she requests that _her_ descriptions of her claims and _her_ characterization
10 and assignment of the factual allegations that support them be given deference over Defendant's
11 mischaracterizations of what they mean and why they are offered.

## II.   PROCEDURAL HISTORY

The instant case has a history of incremental and surprise challenges by Defendants that have succeeded in protracting the litigation and obfuscating the issues in dispute.

On April 6, 2023, Plaintiff filed her initial complaint against Defendant. Dkt. 1. On May 12, 2023, Plaintiff's counsel received an email from Defendant's counsel, Sue Ann Renfro, containing "a listing of the issues which we believe subject [the] Complaint to a Motion to Dismiss and Motion to Strike." King Declaration, at ¶1. At that time and during the parties' meet and confer efforts, Defendant raised only one issue with respect to Plaintiff's Retaliation causes of action under Title VII and FEHA, namely Plaintiff's prayer for punitive damages; and only two issues with respect to Plaintiff's Sex Discrimination claims under Title VII and FEHA, namely Plaintiff's prayer for punitive damages, and those claims being directed against then-Defendant Sokoloff. King Declaration, at ¶2.

The remaining items raised by Defendant's counsel at that time involved Plaintiff's prayer for injunctive relief and the following discrete issues concerning her Section 1983 claim: *Monell* liability, Sokoloff's alleged qualified immunity, and defense counsel's mistaken assertion that the complaint "alleges discrimination as constitutional violations, which is improper." King

Declaration, at ¶3. These three Section 1983 issues were not resolved between the parties at the conclusion of the meet and confer. *Id.* However, in drafting her First Amended Complaint ("FAC"), Plaintiff amended the punitive damages language to make it clear such damages were only being sought against Sokoloff *as requested by Defendant*, removed Sokoloff from the Title VII and FEHA sex discrimination claims *as requested by Defendant*, and removed the prayer for injunctive relief *as requested by Defendant*. King Declaration, at ¶4.

On August 14, 2023, Plaintiff filed her FAC. On August 22, 2023, Plaintiff's counsel received a new meet and confer email from Ms. Renfro that claimed two grounds for a motion to strike and two grounds for a motion to dismiss, <u>all of which only related to Plaintiff's Section 1983 claim</u>. King Declaration, at ¶5. Plaintiff responded to the Section 1983 concerns raised by Defendant by making additional changes to the punitive damages language in her Second Amended Complaint ("SAC") and explicitly identifying the Fourteenth Amendment in her Section 1983 claim to correct defense counsel's continued misunderstanding that the claim was based solely on the Title VII/FEHA discrimination. King Declaration, at ¶6.

At the time of filing Plaintiff's SAC on September 6, 2023, Plaintiff's counsel believed in good faith that all issues concerning four of her claims, specifically Sex Discrimination in violation of Title VII, Retaliation in violation of Title VII, Sex Discrimination in violation of FEHA, and Retaliation in violation of FEHA, had been resolved to Defendant's satisfaction <u>because Defendant raised no issues concerning any of those four claims in their second meet and confer notice or during conference with Plaintiff's counsel</u>. King Declaration, at ¶8.

Yet, on September 27, 2023, Defendant filed a motion to dismiss the entire SAC, including the four claims for which Plaintiff's counsel had made every amendment requested of him and to which no challenges had been raised after filing of the FAC. King Declaration, at ¶9. The Notice of Motion misrepresented the facts by asserting, "[b]ecause Plaintiff has already had several opportunities to plead these claims for relief, and because Plaintiff cannot demonstrate that the forgoing deficiencies can be cured by amendment, Defendant's respectfully seek dismissal of Plaintiff's SAC with prejudice and without leave to amend." Dkt. 20, at 2:15-18.

7

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

The Meet and Confer Certification contained in Defendant's motion to dismiss stated, "Pursuant to the Court's standing order, the parties engaged in pre-filing meet and confer as to the Plaintiff's initial and first amended pleading," but neglected to inform the Court that the majority of substantive issues presented in its motion had never been raised during those meet and confers. Dkt. 20, at 2:23-24. It then falsely asserted, "*[r]ather than correcting the deficiencies raised by Defendants' counsel*, Mr. King used the opportunity to add a new claim and theories." Dkt. 20, at 2:26-27.

On September 30, 2024, the Court entered its order granting Defendant's motion to dismiss the SAC. Dkt. 36. The order also dismissed with prejudice Plaintiff's Section 1983 claim against Sokoloff to the extent it was focused on the right to intimate association. The September 30 Order granted Plaintiff leave to amend her First and Fourth claims alleging sex discrimination based on a hostile work environment, her Second and Fifth claims for retaliation, and her Third claim under Section 1983 based on *Monell* liability. Dkt. 36, at 21:19-21.

On November 8, 2024, Plaintiff filed the TAC. Dkt. 42. On December 6, 2024, Defendant filed two new Rule 12 motions, including this motion to dismiss. Dkts. 47 and 48.

## III.    LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236 (1974)

In considering a motion to dismiss, a court must treat all allegations of material fact in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

"Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991). When exercising it discretion to deny leave to amend, "a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).

## IV. LEGAL ARGUMENT

### A. PLAINTIFF'S FIRST AND FOURTH CLAIMS ARE BASED ON A SEXUALLY HOSTILE WORK ENVIRONMENT, NOT DISPARATE TREATMENT

Defendant's arguments to dismiss Plaintiff's First and Fourth claims based on disparate treatment are inapt because the TAC's sex discrimination claims under Title VII and FEHA are not, nor have they ever been, based on disparate treatment. Plaintiff's causes of action for sex discrimination under Title VII and FEHA are based on a sexually hostile work environment. Accordingly, Plaintiff declines to respond to Defendant's arguments concerning this matter.

### B. PLAINTIFF'S FIRST AND FOURTH CLAIMS ARE JURISDICTIONALLY SOUND AND SUFFICIENTLY PLEADED

#### 1. Failure to Exhaust Administrative Remedies

Defendant asserts that the unwanted sexual advances, harassment and sex-based discrimination from other male supervisors cannot be heard now because Plaintiff failed to exhaust her administrative remedies. Defendant complains that Plaintiff did not describe the actions of Sgt. Martinez and Cpl. Lara or the pre-December 2020 conduct of Bruce Sokoloff in her EEOC complaint, and therefore she is jurisdictionally barred from describing those actions in her civil complaint.

Defendant has not met its burden in establishing that these factual allegations are barred under Ninth Circuit law because they were not specifically mentioned in her EEOC complaint – a complaint that alleged sexual harassment, discrimination, retaliation, and "a hostile work environment that eventually forced me to quit." King Declaration, Ex. E.

"When an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination <u>like or reasonably related to the allegations of the EEOC charge</u>, including new acts occurring during the pendency of the charge before the EEOC." *Oubichon v. North American Rockwell Corporation* 482 F.2d 569, 571 (9th Cir. 1973) (emphasis added); *see also Okoli v Lockheed Technical Operations Co.* 36 Cal. App. 4th 1607, 1617 (1995). When determining whether incidents are "like or reasonably related to" the EEOC charge, the Court is "required under Ninth Circuit law to construe [the] EEOC charge 'with the utmost liberality.'" *EEOC v Farmer Bros. Co.* 31 F.3d 891, 899 (9th Cir. 1994); *citing Kaplan v. Int'l All. of Theatrical & Stage Emps.,* 525 F.2d 1354, 1359 (9th Cir. 1975).

In the instant case, Plaintiff's EEOC Complaint alleged sex discrimination, retaliation, and "a hostile work environment that eventually forced [her] to quit." King Declaration, Ex. E. The allegations concerning Martinez and Lara describe their sexual harassment, sex-based discrimination, retaliation, and contribution to Plaintiff's hostile work environment. The incidents involving Martinez and Lara are therefore like or reasonably related to – in fact, are entirely consistent with – the allegations in the EEOC, as are Sokoloff's unwelcome sexually demeaning statements made to Plaintiff earlier in 2020. The point is that the PPD is rife with the sexual harassment of female employees that contributed to the hostile work environment to which Plaintiff was being subjected and to her conclusion that that she had no choice but to leave the PPD.

Defendant cites to a single case to support its contention that all allegations about Martinez, Lara, and pre-December 2020 Sokoloff are barred: *Cole v. Antelope Valley Union High Sch. Dist.*, 47 Cal.App.4th 1505, 1515 (1996). In that case, plaintiff had attempted to add a *defendant* whom

they failed to name in any part of the DFEH charge. It is well established that an attempt to sue a defendant who was not named in the charge's caption or the body of the administrative complaint will fail for failure to exhaust administrative remedies. Defendant here, however, represents to the Court that *Cole* stands for the proposition that "Plaintiff failed to exhaust her administrative remedies to *bring claims related to these employees* [i.e. Martinez and Lara, both non-parties] or the particulars thereof." Dkt. 48, 15:19-20. (emphasis added). *Cole* provides no support for that statement. Nor has Plaintiff "brought claims" against Martinez and Lara; she has merely added factual allegations about them in support of her existing claims of a hostile work environment at the PPD.

Although not raised by Defendant, a complaint may also fail if it attempts to add entirely new bases for the alleged discrimination, as opposed to additional incidents of discrimination. *See, e.g., Shah v Mount Zion Hosp. & Medical Ctr.*, 642 F.2d 268, 271 (9th Cir. 1981) (EEOC complaint alleging sex and national origin discrimination insufficient to support claims of race, color, and religious discrimination in civil action); *see also Okoli, supra,* 36 Cal. App. 4th at 1609 (plaintiff did not exhaust administrative remedies on illegal retaliatory discharge when administrative charge alleged only discrimination in promotion). Defendant does not assert that Plaintiff is raising new bases for liability in her TAC. Nor does Defendant argue that the factual allegations concerning Martinez and Lara in any way deprived Defendant of notice about Plaintiff's sex discrimination claims under Title VII and FEHA. Again, in her TAC, Plaintiff has simply added further factual incidents of the sex-based harassment, discrimination, and retaliation explicitly alleged in her EEOC charge. Moreover, she has done so <u>in direct response to</u> challenges by Defendant and the Order of this Court asserting that her SAC pleaded insufficient incidents to support her claims.

        2.    **The TAC Pleads Sufficient Facts for Plausible Claims of a Sexually Hostile Work Environment**

Defendant argues that Plaintiff's first and fourth causes of action for discrimination must be dismissed because Plaintiff's complaint allegedly fails to plead plausible claims for sex discrimination based on a hostile work environment. Dkt. 48. at 14:1-3. Specifically, Defendant

argues that the first and fourth claims in the TAC fail to state any specific facts to make a prima facie case against the City for sexual discrimination because the "TAC does not allege physical, verbal, visual, or sexual favor conduct that was sufficiently severe or pervasive, and that Plaintiff was subjected to on the basis of a protected characteristic." Dkt. 48, at 15:3-7. Going further, Defendants assert the TAC is defective because it "does not set forth any specific verbal, visual, physical or sexual favor conduct conditioning an employment benefit on sexual favors that was intimidating, hostile, or offensive toward Plaintiff on the basis of her sex." Dkt. 48, at 15:9-11.

The Ninth Circuit has rejected the narrowly proscribed showing of a sexually hostile work environment that Defendant recites above. Recent case law has made clear that the over-arching consideration in determining whether a sexually hostile work environment exists is the totality of the circumstances. Moreover, "the totality of the circumstances in a Title VII sexually hostile work environment claim includes evidence of sexually harassing conduct, even if it does not directly target the plaintiff, as well as evidence of non-sexual conduct directed at the plaintiff that a jury could find **retaliatory or intimidating**." *Okonowsky v. Garland*, 109 F.4th 1166, 1171 (9th Cir. 2024) (emphasis added); *see also Christian v. Umpqua Bank*, 984 F.3d 801, 810–11 (9th Cir. 2020) (*citing Davis v. Team Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008)) ("In determining whether the harassment was sufficiently severe or pervasive, the fact finder should consider all of the circumstances, 'including those incidents that do not involve verbal communication between the plaintiff and harasser, physical proximity, or physical or sexual touching,' and including interactions between the harasser and third persons.")

The totality of the circumstances evaluation considers whether the conduct "would have made a reasonable woman feel that her work environment had been altered." *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 966-67 (9th Cir. 2002). "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-2, (1998). "[W]hat might be an innocuous occurrence in some circumstances may, in the context of a pattern of discriminatory harassment, take on an altogether different character, causing a worker to feel

demeaned, humiliated, or intimidated on account of her gender." *Christian v. Umpqua Bank*, 984 F.3d 801, 810 (9th Cir. 2020), *citing Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1109 (9th Cir. 1998).

A court may not take an overly narrow approach that "ignores the reality 'that a hostile work environment is ambient and persistent, and that it continues to exist between overt manifestations.'" *Christian*, 984 F.3d at 810 (*quoting Draper*, 147 F.3d at 1108 n.1). Consistent with this, a court should recognize that a hostile work environment is not experienced by a plaintiff as isolated and sporadic incidents, but instead as "an escalating pattern of behavior" that can cause her to feel afraid in her own workplace. *Christian*, 984 F.3d at 810.

In *Okonowsky v. Garland*, decided this year, the Ninth Circuit considered the Title VII sexually hostile work environment claim of a prison psychologist and her assertion that an Instagram site hosted by a high-ranking corrections officer that posted some sexually offensive and harassing material about plaintiff, but also contained hundreds of posts of overtly sexist, racist, homophobic, and anti-Semitic memes, created a hostile work environment that drove her to leave her employment. After the parties engaged in discovery, the defendant Bureau of Prisons moved for summary judgment, which the district court granted. In its analysis of plaintiff's sexually hostile work environment claim, the district court limited the scope of evidence to just five posts on the Instagram site, determining that the five posts 1) targeted plaintiff specifically, and 2) did so because of her sex. *Okonowsky*, 109 F.4th at 1177. Because the posts had been made outside of the workplace and had not been displayed or discussed with plaintiff within the workplace, the district court ruled that the five posts did not amount to severe or frequent harassment in the physical workplace sufficient to show that plaintiff's workplace was objectively hostile. *Id*. at 1177-1178.

The Ninth Circuit reversed the district court on appeal. In doing so, the Court took the opportunity to reiterate Ninth Circuit law concerning sexually hostile work environments and how they are defined. It began by examining the three established factors: "1) whether [plaintiff] was subjected to verbal or physical conduct of a sexual nature; 2) whether the conduct was unwelcome;

and 3) whether the conduct was 'sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.'" *Id*. at 1178, *citing Fried v. Wynn Las Vegas, LLC,* 18 F.4th 643, 647 (9th Cir. 2021). Then it focused on the third factor – "whether Okonowsky adduced evidence of sufficiently severe or pervasive sexually offensive conduct from which a reasonable juror could conclude that Okonowsky's work environment was objectively hostile from the perspective of a reasonable woman." *Okonowsky*, 109 F.4th at 1179, *citing Little, supra*, 301 F.3d at 966. In other words, "the crucial inquiry is…whether [the] discriminatory conduct had an unreasonable effect on Okonowsky's work environment." *Id.* at 1180, fn 7.

In concluding that the plaintiff had presented sufficient evidence of a sexually hostile work environment, the Court gave significant weight to whether the harassing conduct was "intended to, and had the effect of, harassing Okonowsky on the basis of her sex, humiliating and degrading her, and intimidating her in an effort to shape her behavior in the workplace;" the fact that the harasser's "role as a high-ranking law enforcement officer charged with protecting Okonowsky's safety and enforcing workplace policy enhanced the objective severity and pervasiveness of his harassing conduct;" her assertions that she did not feel safe at work and her worries that she could not trust her harasser or her co-workers to protect her in an emergency; and her allegations that the discriminatory and harassing actions made it more difficult for her to complete basic tasks and "ultimately drove her to leave" her employment. *Okonowsky*, 109 F.4th at 1183-4; (*see also Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 687 (9th Cir. 2017) (explaining that ***unwanted discriminatory conduct that "make[s] it more difficult for [the plaintiff] to do her job, to take pride in her work, and to desire to stay in her position" is "enough" to "create an actionable claim under Title VII***"), and *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 445 (9th Cir. 2017) ("[T]he [Supreme] Court has recognized that 'a supervisor's power and authority invests his or her harassing conduct with a particular threatening character.'") (*quoting Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 763, (1998)).

Applying all of these considerations to our case, including *Okonowsky's* holding that "evidence of non-sexual conduct directed at the plaintiff that a jury could find <u>retaliatory or</u>

14

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

intimidating" must be considered part of a sexually hostile work environment,[1] Plaintiff has pleaded sufficient factual allegations to show that her work environment was hostile from the perspective of a "reasonable woman." *See Little*, 301 F.3d at 966. She has pleaded that Sokoloff was her supervisor and a high-ranking officer. She has pleaded that the sexual harassment she experienced from him and her other supervisors deprived her of the normal mentoring and support needed to advance and interfered with her job performance. TAC at ¶35. She has pleaded that Sokoloff knowingly placed her in a situation that created a high risk of workplace injury and she believed he was willing to jeopardize her safety just to harass and punish her. TAC at ¶ 42. She has pleaded facts establishing that Sokoloff humiliated and intimidated her in an effort to shape her behavior in the workplace. TAC at ¶¶ 43, 59. She has pleaded that she felt anxiety about going to work. TAC at ¶49. She has pleaded that Sokoloff surveilled and stalked her while at work. TAC at ¶55. She has pleaded that Sokoloff's verbal intimidation made her feel alienated and that her higher-ups were watching her and assuming the worst about her. TAC at ¶ 60. She has pleaded that Sokoloff told her he wanted to "scare" her, and that he had intentionally made her feel upset and scared at work. TAC at ¶ 66. She has pleaded that she worked in constant fear of unexpected discipline and threatened termination. TAC at ¶ 67. She has pleaded that just prior to her leaving the PPD, Sokoloff directed that an Internal Affairs investigation be conducted against her for an incident she had been told by her direct supervisors would only result in an administrative review. TAC at ¶ 74. And she has pleaded that during her exit interview, she told her interviewer that she felt she had been on thin ice for some time and had been told she was close to getting fired. TAC at ¶ 78.

---

[1] *Okonowsky's* holding that "evidence of non-sexual conduct directed at the plaintiff that a jury could find retaliatory or intimidating" must be considered part of a sexually hostile work environment is entirely consistent with sex-based discrimination jurisprudence because the victim would not be subjected to such conduct but for the fact that she is a woman and had rebuffed overtures that were based upon her status as a woman. Moreover, taking into account such conduct, some of which may not alone rise to the level of a formal adverse action, makes clear the causal connection between Plaintiff's protected activity and the retaliation to which she was subjected.

1  Plaintiff contends she has pleaded facts sufficient to establish a prima facie case for a
2 hostile work environment, and respectfully asks the Court to deny Defendant's motion to dismiss
3 these causes of action.

### C. CONSTRUED IN THE LIGHT MOST FAVORABLE TO PLAINTIFF, THE TITLE VII AND FEHA RETALIATION CLAIMS PLEAD A PLAUSIBLE CAUSAL CONNECTION BETWEEN HER PROTECTED ACTIVITY, THE SUBSEQUENT RETALIATION, AND HER CONSTRUCTIVE DISCHARGE

Defendant argues that Plaintiff has failed to establish that her protected activity was a but-for cause of the alleged adverse employment action. Notably, Defendant does not dispute that Plaintiff has sufficiently pleaded that she engaged in a protected activity. Defendant only argues that Plaintiff has pleaded insufficient facts to establish a causal connection based on "the substantial gap of many months from the alleged protected activity." Dkt. 48, at 18:2-3.

Defendant continues to misconstrue and mischaracterize Plaintiff's claims for retaliation under Title VII and FEHA, and to confuse the months-long retaliatory harassment to which Sokoloff subjected Plaintiff that created an intolerable work environment and led to Plaintiff's constructive discharge with individual "adverse employment actions." The following California Supreme Court decision from last year will hopefully correct Defendant's understanding as to how hostile work environment retaliation claims are reviewed:

> We have recognized that "[r]etaliation claims are inherently fact-specific, and the impact of an employer's action in a particular case must be evaluated in context," considering "the unique circumstances of the affected employee as well as the workplace context of the claim."… Additionally, **the alleged retaliatory acts are to be considered "collectively," rather than individually**. Retaliatory acts may take the form of "a series of subtle, yet damaging, injuries," and "[e]nforcing a requirement that each act

16
**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**separately constitute an adverse employment action would subvert the purpose and intent of the statute."**

*Bailey v. San Francisco Dist. Attorney's Office*, 16 Cal.5th 611, 638 (2024) (internal citations omitted) (emphasis added).

The TAC includes ten (10) pages of factual allegations describing Sokoloff's retaliatory actions that cannot be repeated *in toto* here. Plaintiff pleaded that the hostile, demeaning, threatening, and humiliating actions taken against her began in mid to late January 2021, shortly after she rejected Sokoloff's advances. TAC, at 8:26. Plaintiff alleged in the TAC that Sokoloff's harassment continued and escalated without any temporal gap right up until the point Plaintiff was compelled to seek alternate employment and was constructively discharged in March 2022.

Defendant cites no precedent for its apparent belief that individual instances of abuse or humiliation or harassment, which when taken together create an intolerable work environment resulting in constructive termination, must each be separate "adverse employment actions." The California Supreme Court has ruled that they need not be. *See Bailey, supra*. Defendants' argument against causal connection is based entirely on this mistaken premise. It argues that every instance of Sokoloff's retaliatory harassment must be an adverse employment action from which a measurement of time is taken between it and the protected activity to assess causal connection.

Properly read in the light most favorable to Plaintiff, the TAC establishes the date of the protected activity to be the end of December, the date of the retaliation to be a continuous and escalating period covering the entire span from January 2021 through Plaintiff's constructive discharge in March 2022. Viewed in the light most favorable to Plaintiff and assuming her factual allegations to be true, and considering the extensive case law cited in the previous section that details the unique nature of a hostile work environment and <u>its incompatibility with being analyzed as discrete, isolated episodes</u>, it is apparent there were no temporal gaps between the protected activity and the retaliatory conduct and the constructive discharge.

Plaintiff pleaded sufficient facts that she engaged in the protected activity of refusing the harassing sexual advances of her superior, Bruce Sokoloff, which Defendant does not dispute was

a protected activity. Shortly thereafter, as pleaded in the TAC, Sokoloff began engaging in hostile, humiliating, threatening, and intimidating conduct against her in retaliation for her rejection, none of which individually are required to be adverse employment actions. The TAC pleaded facts showing that Sokoloff's retaliatory and intimidating behavior continued throughout 2021 and 2022. These included, *inter alia*, his admitted responsibility for her romantic partner's termination (intimidation), his putting her in physical danger by violating PPD policy and forcing her under direct order to transport a drunk, incoherent, and agitated arrestee in the front passenger seat of her unit when K-9 units are prohibited from doing so because it considered inherently unsafe (intentional and serious risk of workplace injury or violence), and his verbal statement to her that he expected her to be fired soon (fear, abuse, threat, intimidation), and his escalation of discipline and ordering of an Internal Affairs investigation against her for a K-9 incident that her direct supervisors had already determined to be only subject to an administrative review. As recited above in this Opposition, Plaintiff pleaded that Sokoloff's actions 1) impacted her ability to work, 2) caused her to be fearful and avoidant at work, 3) caused her workplace alienation and humiliation, 4) threatened her physical safety at work and caused her to doubt that her supervisors and co-workers cared about her safety, and 5) destroyed her desire to remain at PPD.

Accordingly, Plaintiff submits that she has pleaded a plausible retaliation claim based on an intolerable work environment, and respectfully requests that Defendant's motion be denied as to these causes of action.

    **D.**    **PLAINTIFF'S THIRD CLAIM PLEADS *MONELL* LIABILITY BASED ON LONGSTANDING/WIDESPREAD PRACTICE OR CUSTOM, NOT RATIFICATION**

Defendant's argument for the dismissal of Plaintiff's *Monell* claim is that Plaintiff has allegedly failed to sufficiently plead *Monell* liability based on ratification. It recites the law of municipal liability premised on ratification. It faults Plaintiff for not pleading facts supporting *Monell* liability based on "conscious, affirmative choice" by any final policy-making authority.

Dkt. 48, 19:21-24. It concludes therefore that Plaintiff failed to establish *Monell* liability because she "failed to sufficiently allege the conduct was ratified by the City." Dkt. 48, at 19:24-25.

Inexplicably, Defendant's motion raises no substantive argument against or challenge to the *Monell* liability actually alleged in the TAC: longstanding/widespread practice or custom. Nowhere in the TAC does Plaintiff assert liability based on the theory of ratification. Plaintiff's third cause of action against the City quite plainly assigns *Monell* liability based on longstanding/widespread practice or custom:

> Sokoloff acted pursuant to a widespread practice or custom of the Porterville Police Department, of which the Porterville Police Chief Jake Castellow and the Porterville City Council have had actual knowledge. The widespread practice or custom consisted of repeated constitutional violations in the form of sexual harassment, sex discrimination, and retaliation against female police officers which were never properly investigated and for which the violators were never disciplined or reprimanded. Instead, the Porterville Police Chief and the Porterville City Council have consistently absolved the violators of wrongdoing; promoted the violators to positions in the Department above their victims, voted to uphold the unlawful termination of female complainants after hearings, and ferociously defended the multiple judicial and administrative actions brought by female officers.

TAC at ¶ 96.

The Ninth Circuit has determined that *Monell* liability may be found where a municipality has a repeated history of police officers committing constitutional violations, those police officers going unpunished, and the municipality continuing to employ and promote them. "[A] custom or practice can be supported by evidence of repeated constitutional violations which went uninvestigated and for which the errant municipal officers went unpunished." *Hunter v. County of*

19
**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

*Sacramento*, 6562 F.3d 1225, 1236 (9th Cir. 2011). "Official nonfeasance can constitute a *Monell* violation when the municipality in effect 'has a policy of inaction and such inaction amounts to a failure to protect constitutional rights.'" *Scanlon v. County of Los Angeles*, 92 F.4th 781, 812 (9th Cir. 2024) (*quoting Mortimer v. Baca*, 594 F.3d 1086, 1096 (9th Cir. 2013).

Defendant's motion includes only a two-sentence argument that can fairly be interpreted as relevant to Plaintiff's assertion of *Monell* liability. The sum of its legal challenge is that Paragraph 96 of the TAC quoted in full above "is conclusory." However, Paragraph 96 simply summarizes the numerous factual pleadings contained in the first seven paragraphs of the TAC. Defendant does not argue that the factual allegations contained in those first seven paragraphs of are conclusory.

Accordingly, Plaintiff respectfully submits that Defendant's motion does not contain any substantive legal challenge applicable to Plaintiff's *Monell* claim and therefore should be denied, and that she has pleaded facts sufficient to support a plausible claim of *Monell* liability in her case against the City of Porterville.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss.

Dated:  January 17, 2025                Respectfully submitted,

                                        LAW OFFICES OF LAWRENCE J. KING

                                        By:  ___/s/_____
                                              Lawrence J. King